Magnolia Development Corporation v. Commissioner.
Magnolia Development Corp. v. Commissioner
Docket No. 77673.
United States Tax Court
T.C. Memo 1960-177; 1960 Tax Ct. Memo LEXIS 113; 19 T.C.M. (CCH) 934; T.C.M. (RIA) 60177; August 31, 1960
*113 Early in 1956 petitioner's board of directors authorized its president to make a contribution of corporate funds or property, to a university, of not to exceed $1,000 in value. At that time petitioner owned 1,000 shares of stock of a Daytona Beach bank having a cost basis of $10,444 for which it had been offered a cash price from O'Rourke of $42,500. On April 17, 1956, a loan of $42,000 was granted petitioner by a Jacksonville bank. The 1,000 shares of Daytona Beach bank stock were pledged to the Jacksonville bank as security for this loan. On the same day, petitioner's president advised the president of the university by letter that petitioner was giving its equity in 1,000 shares of Daytona Beach bank stock, subject to the loan of $42,000 against it. In this letter the university was advised of the offer petitioner had received with the comment that "we pass this along for what it is worth, as the University may wish to avail itself of this price." Also, on the same date, O'Rourke advised the university by letter of its confirmation concerning the purchase of the 1,000 shares of Daytona Beach bank stock for $42,500. After paying off the loan of $42,000 and $16 in transfer taxes, *114 the net proceeds of $484 were delivered to the university by letter dated April 19, 1956. Held, petitioner in substance made a "sale or other disposition" of its 1,000 shares of Daytona Beach bank stock for an "amount realized" of $42,000 within the meaning of those terms as used in section 1001, I.R.C. 1954. Held, further, the respondent's determination that petitioner realized a long-term capital gain of $31,556 from such sale or disposition is sustained. William R. Frazier, Esq., Atlantic National Bank Building, Jacksonville, Fla., for the petitioner. *115 Fred H. Steffey, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion ARUNDELL, Judge: Respondent determined a deficiency in income tax for the calendar year 1956 in the amount of $9,062.35. The only issue we need decide is whether the respondent erred in determining that petitioner realized a long-term capital gain of $31,556 as the result of the transfer in 1956 of 1,000 shares of stock in the First Atlantic National Bank of Daytona Beach, Florida. Two other issues were assigned but are conceded by petitioner in the event the first issue is decided in favor of the respondent. Findings of Fact The stipulated facts are so found and are incorporated herein by this reference. Petitioner is a corporation organized in 1946 under the laws of the State of Florida with its principal office in Daytona Beach. Since its organization, all of its outstanding capital stock has been owned by Thomas T. Cobb and his wife. Petitioner filed its United States corporation income tax return for the taxable year 1956 with the district director of internal revenue in Jacksonville, Florida. On this tax return petitioner reported its income on the cash basis *116 of accounting. On or about January 26, 1956 a meeting of the board of directors of petitioner was held at which a request by Stetson University, Deland, Florida, for assistance with its law center was discussed and at which the board of directors authorized the president of petitioner to make a contribution of corporate funds or property not to exceed $1,000 in value. On or about March 15, 1956, a meeting of the board of directors of petitioner was held at which the directors authorized the president of petitioner to borrow $42,000 from the Atlantic National Bank[1] of Jacksonville, Florida, against 1,000 shares of the stock of the First Atlantic National Bank of Daytona Bearch, [2]Florida, owned by petitioner. Under date of March 26, 1956, Cobb executed on behalf of petitioner a pledge card indicating his intention for petitioner to donate $500 to the Stetson University Law Center Fund. On April 17, 1956, a loan of $42,000 was granted petitioner by the Jacksonville bank. As security for this loan 1,000 shares of the stock of the Daytona *117 Beach bank owned by petitioner were pledged to the Jacksonville bank. The certificates evidencing the 1,000 shares of stock so pledged were delivered to the Jacksonville bank by petitioner. On or about April 17, 1956, the board of directors of petitioner held a meeting at which they authorized the president of petitioner to give to Stetson University the 1,000 shares of the stock of the Daytona Beach bank belonging to petitioner which had been pledged to the Jacksonville bank. The transfer of the stock to Stetson University by petitioner so authorized by its board of directors was to be made subject to all indebtedness against it at the Jacksonville bank. On April 17, 1956, petitioner's president wrote J. Ollie Edmunds, president of Stetson University, a letter, the body of which is as follows: "Magnolia Development Corporation, in accordance with its promise to assist in the Stetson Law Center Project, is giving its equity in 1000 shares of capital stock of First Atlantic National Bank of Daytona Beach to Stetson University. As this stock has a loan of $42,000 against it, the certificate is in the possession of the lender, Atlantic National Bank of Jacksonville. Mr. Charles *118 D. Wynne of that bank is familiar with the transaction. This gift is subject to that indebtedness. "The last recorded sale of the stock of which we have any knowledge was in January of this year at a price of $30.00 per share. Since that time, my partner and I have been offered a price of $42.50 for a block we hold jointly. This offer came from T. Nelson O'Rourke of Daytona Beach, and we pass this along for what it is worth, as the University may wish to avail itself of this price. "We are enclosing a stock power covering this gift, which will enable you to have the stock transferred from Magnolia Development Corporation to the University or to your nominee as the case may be." On April 17, 1956, Stetson University sold the 1,000 shares of stock transferred to it by petitioner to T. Nelson O'Rourke, Inc. By letter to Stetson University for the attention of Edmunds, dated April 17, 1956, T. Nelson O'Rourke, Inc., enclosed a confirmation of this purchase from Stetson University of 1,000 shares of the stock of the Daytona Beach bank at $42.50 per share. In this letter it was stated that it was understood that delivery of stock purchased would be made by the Jacksonville bank to *119 the Daytona Beach bank against payment of $42,500. By letter dated April 18, 1956, Edmunds advised Emory F. Thames, president of the Daytona Beach bank, that Stetson University was the owner of 1,000 shares of the stock of the bank which had been contributed to the university by petitioner and requested a transfer of the stock on the records of the bank. Edmunds in this letter also advised the bank that since receiving the stock the university had sold it to T. Nelson O'Rourke, Inc., for $42,500 and requested the transfer of the stock to T. Nelson O'Rourke, Inc., upon payment to the bank of $42,500. Edmunds further stated in his letter that the stock certificates evidencing the stock involved were held by the Jacksonville bank as security for a loan of $42,000 and requested that after payment of the $42,000 loan, the balance of the sales price be remitted to the university. Stock powers enabling the transfers on the records of the Daytona Beach bank requested by Edmunds were enclosed with his letter. By letter dated April 19, 1956, J. O. Thomas, cashier of the Daytona Beach bank, advised Edmunds that the $42,500 payment for the 1,000 shares of the bank's stock sold by the university *120 to T. Nelson O'Rourke, Inc., had been received and that the stock had been transferred to T. Nelson O'Rourke, Inc., on the bank's records. Thomas further stated that the $42,000 indebtedness of petitioner to the Jacksonville bank and $16 of the state and Federal transfer taxes had been satisfied out of the proceeds of the sale of the stock. The balance of the proceeds of the sale, $484, was noted as being remitted to the university. The fair market value on April 17, 1956, of 1,000 shares of the stock of the Daytona Beach bank was $42,500. The cost basis of the petitioner in the 1,000 shares of the stock of the Daytona Beach bank transferred by it to Stetson University on April 17, 1956, was $10,444. The 1,000 shares of the stock of the Daytona Beach bank transferred by the petitioner to Stetson University on April 17, 1956, had been held by petitioner for a period in excess of 6 months at the time of such transfer. No taxable income from the transaction involving the transfer of the 1,000 shares of stock to Stetson University or the satisfaction of the petitioner's $42,000 indebtedness to the Jacksonville bank was reported by the petitioner on its United States corporation *121 income tax return for the taxable year 1956. However, petitioner reported on Schedule M of its United States corporation income tax return for the taxable year 1956 nontaxable income of $32,056, which was explained as follows in a schedule attached to its return: On April 17, 1956 taxpayer gave to
Stetson University 1,000 shares of stock
in the First Atlantic National Bank. Fair
market value as of the date of gift
$42,500.00 (as per offer from investment
dealer) plus transfer taxes of $16.00 -
total $42,516.00. Loan against stock as-
sumed by donee $42,000.00 - net deducti-
ble gift $516.00.
Taxpayer's Basis in Stock
given
$10,444.00
Market Value as of date of
gift
42,500.00
NON-TAXABLE CREDIT
TO EARNED SURPLUS
(DIFFERENCE)
$32,056.00
In his statutory notice of deficiency the respondent determined that the transfer of the 1,000 shares of the stock of the Daytona Beach bank to Stetson University by petitioner on or about April 17, 1956, subject to its $42,000 indebtedness to the Jacksonville bank, constituted a disposition of the stock by the petitioner; that under the provisions of section 1001 of the Internal Revenue Code *122 of 1954, the petitioner realized a gain of $31,556 representing the difference between the amount realized of $42,000 and its cost basis of $10,444; and that this gain constituted a long-term capital gain under the provisions of section 1222 (3) of the Internal Revenue Code of 1954. In his statutory notice of deficiency the respondent also determined that the petitioner had made a charitable contribution to Stetson University of $484 in the taxable year 1956. The respondent further determined that petitioner was a personal holding company. The transfer by petitioner of the 1,000 shares of stock of the Daytona Beach bank to Stetson University on April 17, 1956, subject to the $42,000 indebtedness outstanding against the stock was in substance a sale or other disposition of the stock to Stetson University by the petitioner for the amount of the indebtedness to which the stock was subject. Petitioner realized in the taxable year 1956 a long-term capital gain of $31,556 as a result of its transfer to Stetson University of 1,000 shares of the stock of the Daytona Beach bank subject to its $42,000 indebtedness to the Jacksonville bank. Opinion We agree *123 with the respondent's determination. Petitioner owned stock in a Daytona Beach bank which had a cost basis to it of $10,444 and a fair market value on April 17, 1956, of $42,500. O'Rourke had offered to purchase the stock from petitioner at its then fair market value. Instead of selling the stock direct to O'Rourke and reporting the profit for tax purposes, petitioner, through its president, devised a scheme for the disposition of the stock whereby it planned to make a gift of $500 and end up with $42,000 in cash with no profit to report for tax purposes. Prior to April 17, 1956, namely, on March 26, 1956, petitioner had executed a pledge card indicating its intention to donate $500 to Stetson University. On April 17, 1956, petitioner secured a loan of $42,000 from a Jacksonville bank for which it pledged the Daytona Beach bank stock as security. On the same day, April 17, 1956, petitioner's president wrote the president of Stetson University a letter, the body of which is set out in our findings. Again, on the same day, April 17, 1956, Stetson University sold the Daytona Beach bank stock to O'Rourke for a cash consideration of $42,500, which was paid to the Daytona Beach bank, which *124 within the next 2 days paid off petitioner's loan of $42,000 at the Jacksonville bank, paid $16 in transfer taxes, remitted $484 to Stetson University, and delivered a certificate for the 1,000 shares of Daytona Beach bank stock to O'Rourke. The route taken by petitioner in the disposition of its stock in the Daytona Beach bank served no business purpose other than an attempt at tax avoidance. The economic realities of the disposition were in substance a sale of the stock for a price $500 less than its fair market value of $42,500, thus making the selling price $42,000, with a gift of the balance after transfer taxes. The so-called loan petitioner obtained from the Jacksonville bank lacked substance. Petitioner had no intention of repaying the so-called loan. It was merely a step taken by petitioner in obtaining the selling price of the stock. In George G. Lynch, 31 T.C. 990, 995, affd. 273 F. 2d 867 (C.A. 2, 1959), we said: "A taxpayer has the right to mold a transaction having a legitimate business purpose in such a manner as to minimize the incidence of taxation, *125 for no individual is obligated to pay more tax than the law demands of him. United States v. Isham, 84 U.S. 496; Gregory v. Helvering, 293 U.S. 465; United States v. Cumberland Public Service Co., 338 U.S. 451. A commonly encountered problem, however, is that a taxpayer, seeking to avoid taxation, will clothe a transaction and make it appear to be something which in reality it is not. When the Court is confronted with this type of problem, it will ignore the form the transaction has assumed, declaring it to be a sham or lacking in economic reality, and will ascertain the tax impact based upon the substantive nature of the transaction. Gregory v. Helvering, supra; Commissioner v. Court Holding Co., 324 U.S. 331; Commissioner v. P. G. Lake, Inc., 356 U.S. 260. In the instant case petitioner, in our opinion, was seeking to avoid taxation by making the disposition of its stock in the Daytona Beach bank appear to be something which in reality it was not. We must therefore ignore the form the disposition has assumed and look only at the economic realities of the transaction. The instant case is comparable *126 both in fact and in law with Joseph B. Simon, 32 T.C. 935 (on appeal to C.A. 3, Jan. 1960) wherein we said: (p. 940) "It is thus apparent, we think, that all the steps enumerated were part and parcel of the same transaction whereby Simon transferred and sold the RKO Building to Exco subject to the said mortgage, or at a cost to Exco of $119,098.22, the then principal amount of the mortgage, and we so hold. * * * the fact that the sale may have been, and apparently was, a bargain sale, as result of which Penn-Liberty was able to improve its financial condition by a write-up of the building on its books by the amount of the appraised value over the principal amount of the mortgage, did not, in our opinion, make the transaction any the less a sale. Simon, according to his testimony, had agreed with Denby to make a contribution through Exco to the capital of Penn-Liberty, which contribution was to be effected through the transfer of the RKO Building, but either Penn-Liberty did not require a contribution of the full value of the building or Simon was unwilling to make a contribution of that magnitude. Hence the sale whereby Exco acquired the building at a cost, or stated *127 otherwise, subject to the mortgage liability of $119,098.22, which in effecting the transaction had been placed against it, and whereby Simon was enabled to realize a profit of $34,206.55 * * *." In view of the foregoing, we sustain the respondent's determination on all the issues. Decision will be entered for the respondent. Footnotes
1. Hereinafter sometimes referred to as the "Jacksonville bank." ↩
2. Hereinafter sometimes referred to as the "Daytona Beach bank."↩