Thomas F. Abbott, Jr., and Edith Abbott v. Commissioner.
Abbott v. Commissioner
Docket No. 474-62.
United States Tax Court
T.C. Memo 1964-65; 1964 Tax Ct. Memo LEXIS 269; 23 T.C.M. (CCH) 445; T.C.M. (RIA) 64065; March 13, 1964
*269 Petitioner and X each owned 50 percent of the stock in A, B, C and D corporations. A and B corporations were managed by petitioner and C and D corporations were managed by X. B corporation was in financial difficulty. Pursuant to a contract made by petitioner, X, and A, B, C and D corporations, X transferred his stock in A and B corporations respectively to A and petitioner in exchange for certain assets and cash and petitioner transferred his stock in C and D corporations as a capital contribution to B corporation which thereafter transferred the stock respectively to C and D corporations for cash. Held: Petitioner realized long-term capital gain on the sale to C and D corporations of his stock in those corporations and the proceeds of the sale received by B corporation represent a capital contribution by petitioner to that corporation. Warren W. Shipman, III, Trans-American Life Bldg., Ft. Worth, Tex. and Robert W. Decker, for the petitioners. Willard Herbert, for the respondent. BRUCE Memorandum Findings of Fact and Opinion BRUCE, Judge: Respondent determined a deficiency in the income tax of petitioners for the year 1959 in the amount of $35,570.49. The sole issue is whether long-term capital gain realized upon the sale of stock is taxable to petitioners or is taxable to a controlled corporation to which the stock was transferred pursuant to a contract whereby the corporation agreed to sell the stock upon receipt. Findings of Fact The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. Petitioners are husband and wife who reside in Fort Worth, Texas. Their joint Federal income tax return for the calendar year 1959 was filed with the district director of internal revenue at Dallas, Texas. For a period of approximately 25 years, Thomas F. Abbott, hereinafter referred to as petitioner, and William L. Francis have been associated together in various corporate business ventures. It had been their customary *271 practice for each to acquire 50 percent of the stock in a corporation and thereafter, for one or the other to manage the business of the corporation and to receive a salary from that corporation. In the taxable year 1959, Francis and petitioner each owned 50 percent of the stock of four separate Texas corporations which were Frontier Pontiac, Inc., Frontier Investment Company, Texas Drive-Ur-Self System, and Texas Commercial Leasing Company. Francis was the manager of Texas Drive-Ur-Self System and Texas Commercial Leasing Company and petitioner managed Frontier Pontiac, Inc. and Frontier Investment Company. At all times material herein, Frontier Pontiac, Inc. was the owner of Pontiac and Rambler automobile franchises in Fort Worth, Texas. Beginning in 1954, Frontier Pontiac, Inc. began to suffer substantial operating losses. On its 1959 Federal income tax return, the corporation showed a net operating loss carry-forward from 1956 in the amount of $41,289.54, a loss carry-forward from 1957 in the amount of $110,618.85, and a loss carry-forward from 1958 in the amount of $104,079.40, for a total loss carry-forward to 1959 in the amount of $255,987.79. The "operating loss" reported *272 for 1959 was $90,691.48, although, as the result of income received from other sources, including the sale of its stock in Texas Commercial Leasing and Texas Drive-Ur-Self, net income (before application of the loss carry-forwards) reported for 1959 was $33,963.08. For several years preceding 1959, Francis and petitioner had differences of opinion in regard to the businesses in which they were interested. Francis was dissatisfied with the continued losses incurred by Frontier Pontiac, Inc. and petitioner was unhappy because of Francis' refusal to contribute additional working capital to that corporation. Approximately in 1956 Francis proposed that petitioner and he divide their business interests. Petitioner refused. In 1958 petitioner suggested that Francis and he contribute additional equity capital to Frontier Pontiac, Inc. Francis refused, whereupon petitioner suggested that petitioner sell part of his stock in Texas Commercial Leasing Company and Texas Drive-Ur-Self System to a third party to raise capital for Frontier Pontiac, Inc. Francis informed petitioner that he preferred that a third party not be brought into the business. Petitioner did not sell any of his Texas Commercial *273 Leasing Company stock to a third party. In the fall of 1958 representatives of Pontiac Motor Division of General Motors Corporation and of American Motor Sales Corporation advised petitioner that Frontier Pontiac, Inc. needed additional working capital in order to survive and operate on a satisfactory basis. On January 17, 1959, the following agreement, which was drawn up by Francis and petitioner's individual accountants, was entered into by Francis, petitioner, Frontier Pontiac, Inc., Frontier Investment Company, Texas Drive-Ur-Self System and Texas Commercial Leasing Company: WHEREAS, THOMAS F. ABBOTT, JR., and WILLIAM R. FRANCIS are the sole stockholders of FRONTIER INVESTMENT CO., FRONTIER PONTIAC, INC., TEXAS DRIVE-UR-SELF SYSTEM and TEXAS COMMERCIAL LEASING COMPANY (except for the preferred stock of Texas Drive-Ur-Self System and the preferred stock of Frontier Pontiac, Inc. that are owned by Frontier Investment Co.) and they also constitute the majority of the Board of Directors of each of the named corporations; and WHEREAS, either individually, or as stockholders, directors and officers of the various named corporations, Mr. Abbott and Mr. Francis have agreed upon *274 accomplishing certain results with regard to the stock and assets of the named corporations and have agreed to vote their stock to accomplish said results. NOW, THEREFORE, in consideration of the mutual covenants and obligations hereinafter set forth, the above named individuals and corporations do hereby agree to and the stockholders agree to vote their stock to accomplish the following: 1. Mr. Abbott will make the necessary arrangements with the Bank of Commerce of Fort Worth, Texas, to release Mr. Francis from his personal guaranty of Frontier Investment Co.'s note that is due the Bank of Commerce in the principal sum of Eighty Thousand and No/100 ($80,000.00) Dollars. Mr. Francis agrees to protect and hold Mr. Abbott harmless from any liability on any debts of Texas Drive-Ur-Self System and Texas Commercial Leasing. Mr. Abbott agrees to protect and hold Mr. Francis harmless from any liability on any debts of Frontier Pontiac, Inc. and Frontier Investment Co. Occept Frontier Investment Co.'s debts of approximately $105,000.00 and $35,000.00 which Mr. Francis assumes as set forth in paragraph 5 below. 2. Texas Drive-Ur-Self System shall caused to be redeemed all of its outstanding *275 preferred stock for the sum of Forty Thousand and No/100 ($40,000.00) Dollars. Said preferred stock is owned by Frontier Investment Co. and consists of four hundred (400) shares with a par value of One Hundred and No/100 ($100.00) Dollars per share. 3. In order to improve the financial structure of Fronier Pontiac, Inc., Mr. Abbott will make a contribution to the capital of Frontier Pontiac, Inc., of one hundred (100) shares of the stock of Texas Commercial Leasing Company, said shares being all of the stock that Mr. Abbott owns in said Company. After Frontier Pontiac, Inc. has acquired the 100 shares of stock in Texas Commercial Leasing Company that are now owned by Mr. Abbott, Frontier Pontiac, Inc. agrees to sell and Texas Commercial Leasing Company agrees to buy the 100 shares of stock as treasury stock for the sum of Twenty Thousand and No/100 ($20,000.00) Dollars, cash. 4. In order to improve the financial structure of Frontier Pontiac, Inc. Mr. Abbott will make a contribution to the capital of Frontier Pontiac, Inc., of one thousand six hundred (1,600) shares of the common stock of Texas Drive-Ur-Self System; said shares being all of the stock Mr. Abbott owns in said Company. *276 After Texas Drive-Ur-Self System has redeemed its preferred stock and Frontier Pontiac, Inc. has acquired the 1,600 shares of the common stock of Texas Drive-Ur-Self System that are now owned by Thomas F. Abbott, Jr., Frontier Pontiac, Inc. agrees to sell and Texas Drive-Ur-Self System agrees to purchase the 1,600 shares of its common stock as treasury stock for the sum of One Hundred Sixty-one Thousand Two Hundred Fifty and No/100 ($161,250.00) Dollars. 5. To carry out a plan of partial liquidation, Mr. Francis agrees that he will surrender two thousand four hundred ninely (2,490) shares of stock in Frontier Investment Co. said shares being all of his stock in Frontier Investment Co., for cancellation or redemption and Frontier Investment Co. shall transfer to Mr. Francis in partial liquidation and solely in exchange for his stock, the assets listed below and Mr. Francis shall assume the obligations outstanding against said assets, as listed below: * * *
[The assets referred to in the paragraph above consist of certain parcels of real estate and cash in the amount of $83,834.63. The obligations to be assumed by Francis are notes in the amounts of $105,000 and $35,000, *277 respectively secured by liens against two of the above-mentioned parcels of real estate.] 6. Mr. Francis agrees to sell and Mr. Abbott agrees to purchase four hundred ninety-three shares of the Class B, Common Stock of Frontier Pontiac, Inc. that are now owned by Mr. Francis. Said shares constitute all of the stock in said corporation owned by Mr. Francis except five (5) shares of the Class B Common Stock that are being retained by Mr. Francis. The consideration to be paid by Mr. Abbott to Mr. Francis for the 493 shares of Frontier Pontiac, Inc. stock is Ten Dollars ($10.00). Pursuant to this agreement, petitioner transferred his stock in Texas Commercial Leasing Company and Texas Drive-Ur-Self System to Frontier Pontiac, Inc. on January 19, 1959, and on January 28, 1959, Frontier Pontiac, Inc. sold this stock to Texas Commercial Leasing Company and Texas Drive-Ur-Self System, respectively. Payment of the purchase price by Texas Commercial Leasing Company was made by the cancellation of a loan of $20,000 made to Frontier Pontiac, Inc. on January 19, 1959. The proceeds of the sale were utilized in the operations of Frontier Pontiac, Inc. On its Federal income tax return for the *278 year 1959, Frontier Pontiac, Inc. reported long-term capital gain in the amount of $142,250 on the sale of stock in Texas Drive-Ur-Self System and Texas Commercial Leasing Company. Respondent determined, as set forth in the notice of deficiency, that the $142,250 long-term capital gain on the sale of the stock in question was taxable to petitioners and that the resulting increase in petitioners' taxable income for the year 1959 was $71,136.75. In the alternative, respondent determined that if the sale of the stock in question was a sale by Frontier Pontiac, Inc., the $142,250 capital gain on the sale is properly allocable to petitioners under section 482 of the 1954 Code. Opinion The issue is whether the sale of petitioner's stock in Texas Commercial Leasing Company and Texas Drive-Ur-Self System to those corporations was made by petitioner or by Frontier Pontiac, Inc. Respondent contends that Frontier Pontiac, Inc. was a mere conduit through which title to the stock in question was passed in effecting the sale of this stock by petitioner to Texas Commercial Leasing Company and Texas Drive-Ur-Self System. In the alternative, respondent asserts that if it is determined that *279 the sale was made by Frontier Pontiac, Inc., the long-term capital gain realized on the sale should be allocated to petitioner under section 482 of the Internal Revenue Code of 1954. Petitioner on the other hand, contends that the transfer of the stock in question to Frontier Pontiac, Inc. was a bona fide contribution of capital to that corporation and that the subsequent transfer of this stock by Frontier Pontiac, Inc. was a sale by that corporation to Texas Drive-Ur-Self System and Texas Commercial Leasing Company. Although a taxpayer has the right to minimize his taxes as far as the law allows, United States v. Isham, 84 U.S. 496; Gregory v. Helvering, 293 U.S. 465; United States v. Cumberland Pub. Serv. Co., 338 U.S. 451, he may not through form alone achieve tax advantages which substantively are without the intent of the statute. Gregory v. Helvering, supra; Commissioner v. Court Holding Co., 324 U.S. 331: George G. Lynch, 31 T.C. 990. Several acts accomplishing a certain result may substatively constitute separate transactions or successive steps in carrying out a single transaction, *280 depending in part upon the mutual interdependence and temporal proximity of the acts, the intent of the parties, and the ultimate result sought to be accomplished. American Bantam Car Co., 11 T.C. 397, affd. per curiam 177 F. 2d 513 (C.A. 3), certiorari denied, 339 U.S. 920. Whether a series of transfers resulting in a sale constitute for tax purposes one or several transactions is a question of fact. Commissioner v. Court Holding Co., supra; United States v. Cumberland Pub. Serv. Co., supra.In deciding this question, each step, from the commencement of negotiations to the consummation of the sale, is relevant. A sale by one person cannot be transformed into a sale by another by using the latter as a mere conduit through which to pass title. Commissioner v. Court Holding Co., supra.Cf. Virginia W. Stettinius Dudley, 32 T.C. 564, affd. 279 F. 2d 219 (C.A. 2); S. Nicholas Jacobs, 21 T.C. 165, affd. 224 F. 2d 412 (C.A. 9). In the instant case, petitioner and Francis had previously discussed the separation of their business interests and Frontier Pontiac, *281 Inc.'s need for additional working capital. The series of transfers resulting in the sale of petitioner's stock in Texas Drive-Ur-Self System and Texas Commercial Leasing Company to those corporations accomplished both these objectives. That these objectives were the intended outcome of the series of transfers resulting in the sale of petitioner's stock is evident from the contract pursuant to which these transfers were made. In addition to providing for the termination of Francis' interest in Frontier Investment Company and Frontier Pontiac, Inc. (except for five shares of stock in Frontier Pontiac, Inc.), that contract provides that Frontier Pontiac, Inc. will sell petitioner's stock in Texas Commercial Leasing Company and Texas Drive-Ur-Self System to those corporations upon receipt of this stock from petitioner. The intended termination of petitioner's interest in Texas Commercial Leasing Company and Texas Drive-Ur-Self System and contribution of additional capital to Frontier Pontiac, Inc. could have been accomplished, however, by petitioner's transferring his stock directly to Texas Commercial Leasing Company and Texas Drive-Ur-Self System and contributing the cash realized *282 on the sale to Frontier Pontiac, Inc. The intermediate transfer of petitioner's stock to Frontier Pontiac, Inc. had no purpose except the reduction of taxes by offsetting the long-term capital gain on the sale of the stock against the net operating loss carryovers of Frontier Pontiac, Inc. Petitioner contends that since the purpose of selling petitioner's stock was to obtain additional working capital for Frontier Pontiac, Inc., the purpose of reducing taxes was a sufficient business purpose for the intermediate transfer since Frontier Pontiac, Inc. thereby realized a larger net capital contribution. However, reduction of taxes alone is insufficient to justify separate treatment for tax purposes of several steps taken to arrine at an originally intended result. Gregory v. Helvering, supra; Commissioner v. Transport Trad. & Term. Corp. 176 F. 2d 570, 572 (C.A. 2); Hunter Mfg Corp., 21 T.C. 424, 431. Since the transfer to Frontier Pontiac, Inc. was made pursuant to a plan providing for the ultimate sale of petitioner's stock to Texas Commercial Leasing Company and Texas Drive-Ur-Self System without any purpose for the transfer except that of reducing *283 taxes, Frontier Pontiac, Inc. was for tax purposes a mere conduit through which title passed in effecting the sale by petitioner to the purchaser corporations and the proceeds of the sale represented a contribution of capital to Frontier Pontiac, Inc. by petitioner. Commissioner v. Court Holding Co., supra. The numerous cases cited by petitioner each are distinguishable on their facts from the instant case. However, in each case the court gave effect to the substance of a transaction or series of transactions and applied the income tax law accordingly. The resolution of the instant case likewise gives tax effect to the undistorted reality of the sale of petitioner's stock to Texas Commercial Leasing Company and Texas Driv-Ur-Self System. We need not consider respondent's alternative allegation that if Frontier Pontiac, Inc. is determined to have made the sale in question, the gain realized on that sale should be allocated to petitioner under section 482 of the 1954 Code, since we agree with respondent's original contention. Since we have decided that petitioner sold the stock in question, respondent's determination that the long-term capital gain realized on the *284 sale of this stock is taxable to petitioner is sustained. Decision will be entered for the respondent.