JOSEPH B. AND JOSEPHINE L. SIMON, HUSBAND AND WIFE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 60090.    Filed July 22, 1959.

*Fred L. Rosenbloom, Esq.,* and *Thomas P. Glassmoyer, Esq.,* for the petitioners.

*George H. Bowers, Jr., Esq.,* for the respondent.

936

OPINION.

TURNER, *Judge:* Starting with the proposition that the borrowing of the $120,000 in September of 1951 was not an income-realizing transaction, it is the contention of the petitioners that Simon for a purported consideration of $100, which in fact was not paid, transferred the RKO Building to Exco as a contribution to capital and Exco in turn, similarly without consideration, transferred the building to its wholly owned subsidiary, Penn-Liberty; that since, under section 113(a)(8)(B) of the Internal Revenue Code of 1939,[1] property acquired by a corporation as a contribution to capital takes the same basis in the hands of the corporation as it had in the hands of its transferor-stockholder, the transfer of the building by Simon to Exco and then by Exco to Penn-Liberty was not a gain or loss transaction, and under *Mendham Corporation*, 9 T.C. 320, and *Woodsam Associates, Inc.*, 16 T.C. 649, affd. 198 F. 2d 357, there could be no realization of gain by anyone unless or until the building should be sold by Penn-Liberty, and then the realization would be that of Penn-Liberty and not Simon.

It was the testimony of Simon that due to tornadoes and hurricanes at the end of 1950, Penn-Liberty had sustained serious losses in 1951, and would need contributions to surplus in order to maintain its required legal reserves; that he and Denby discussed the matter, and as a result of those discussions he "contributed the property described here as the RKO property, and Mr. Denby agreed to make a similar contribution." He also testified that the contribution was made in kind because it was inconvenient to "provide cash at the moment instead of the real estate."[2] Simon further testified that the transaction was discussed with Penn-Liberty, and that it "became a Penn-Liberty deal even before the mortgage," the mortgage referred to being the $120,000 mortgage of September 28, 1951.

---

[1] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property; except that—

    \*     \*     \*     \*     \*     \*     \*

  (8) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If the property was acquired after December 31, 1920, by a corporation—

    (A) by the issuance of its stock or securities in connection with a transaction described in section 112(b)(5) (including also, cases where part of the consideration for the transfer of such property to the corporation was property or money, in addition to such stock or securities), or

    (B) as paid-in surplus or as a contribution to capital,

then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

[2] And yet, as hereafter pointed out, the transaction was so set up and carried out as to permit Simon to receive and retain free and clear from the claims of anyone $40,412.73 of the mortgage proceeds, which amount in cash could readily have been made available to Penn-Liberty had the transfer of the property to Exco and then to Penn-Liberty been only a contribution to capital.

The facts show that on February 14, 1941, Simon purchased the RKO Building for $104,220.45; that on September 9, 1941, he borrowed $27,000, and on June 3, 1947, $80,000, giving in each instance a mortgage on the building, with the 1941 mortgage being subordinated to the 1947 mortgage. By September of 1951, the unpaid balance of the 1941 mortgage was $10,875.87 and that of the 1947 mortgage $65,123.12, or a total of $75,998.99. The facts also show that from February 14, 1941, Simon's allowable depreciation on the building had by December 27, 1951, amounted to $22,015.28, and that on the latter date his adjusted basis for the building was $82,205.17.

Also shown of record is the fact that Simon, in disposing of the building after it "became a Penn-Liberty deal," obtained $120,000 in cash on the mortgage of September 28, 1951, and after expending $75,998.99 in satisfying the prior mortgages, $2,686.50 in settlement costs and $901.78 to cover the November and December principal payments on the new mortgage, transferred the building to Exco subject to the September mortgage, then in the principal amount of $119,098.22, retaining as his own the remaining $40,412.73 of the mortgage proceeds.

It is thus apparent, we think, that all the steps enumerated were part and parcel of the same transaction whereby Simon transferred and sold the RKO Building to Exco subject to the said mortgage, or at a cost to Exco of $119,098.22, the then principal amount of the mortgage, and we so hold. That in financing the sale the loan was negotiated prior to the transfer and by or in the name of the seller, rather than simultaneously with or after the transfer and by or in the name of the purchaser, is, we think, immaterial. Furthermore, the fact that the sale may have been, and apparently was, a bargain sale, as result of which Penn-Liberty was able to improve its financial condition by a writeup of the building on its books by the amount of the appraised value over the principal amount of the mortgage, did not, in our opinion, make the transaction any the less a sale. Simon, according to his testimony, had agreed with Denby to make a contribution through Exco to the capital of Penn-Liberty, which contribution was to be effected through the transfer of the RKO Building, but either Penn-Liberty did not require a contribution of the full value of the building or Simon was unwilling to make a contribution of that magnitude. Hence the sale whereby Exco acquired the building at a cost, or stated otherwise, subject to the mortgage liability of $119,098.22, which in effecting the transaction had been placed against it, and whereby Simon was enabled to realize a profit of $34,206.55, that amount being the excess of the mortgage proceeds received by Simon over his adjusted basis of $82,205.17, the $2,686.50 of settlement costs and the $901.78 expended by him to cover the No-

vember and December principal payments on the new mortgage, which payments had become due prior to the transfer on December 27, 1951.

*Mendham Corporation, supra,* and *Woodsam Associates, Inc., supra,* are not this case. In both of those cases, there were transfers of property to a corporation in exchange for stock within the meaning of section 112(b)(5) of the 1939 Code, whereunder no gain or loss was to be recognized. In the instant case, not only was there no exchange covered by the nonrecognition of gain provisions of section 112(b), but on the facts as concluded above, there was a sale of the RKO Building to Exco at a price of $119,098.22. And, as we have pointed out, the transaction was not any the less a sale by reason of the fact that the value of the property transferred was in excess of the selling price at the time of the transfer, thereby enabling Penn-Liberty to improve its financial condition by a writeup of the building on its books. By reason of the differences indicated, it is unnecessary, we think, to comment here on what was said in the opinions in the two cases referred to concerning the liability of the transferor-stockholder under the facts in those cases, or to discuss the question of basis to Exco or Penn-Liberty for the RKO Building for gain or loss or depreciation purposes. But see and compare *Crane* v. *Commissioner,* 331 U.S. 1, and *Blackstone Theatre Co.,* 12 T.C. 801, to the effect that the basis for a given property includes liens thereon, even though not personally assumed by the taxpayer.

Respondent has filed an amended answer asking for an increased deficiency based on a claim, in the alternative, that if petitioner disposed of his property other than by sale or exchange, the gain realized would be ordinary income rather than capital gain. Our determination that petitioner has effected a sale of his property disposes of this alternative issue.

Petitioners appear to have abandoned the issue with respect to substantial underestimation of their estimated tax, probably because their estimated tax for 1951 was less than 80 per cent of the tax liability they reported, and also because their 1951 estimate was less than the tax liability reported on their 1950 return.

It appears that respondent in his determination of deficiency failed to take into account the $901.78 representing the November and December principal payments under the mortgage which had been made by petitioner, and for that reason a recomputation of the deficiency will be required.

*Decision will be entered under Rule 50.*