Joseph B. and Josephine L. SIMON, Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

Joseph B. and Josephine L. SIMON, Respondents.

Nos. 13207, 13208.

United States Court of Appeals Third Circuit.

Argued Sept. 14, 1960.

Decided Dec. 15, 1960.

Rehearing Denied Jan. 25, 1961.

Fred L. Rosenbloom, Philadelphia, Pa. (Thomas P. Glassmoyer, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., on the brief), for petitioners.

Arthur I. Gould, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Harry Baum, Attorneys, Department of Justice, Washington, D. C., on the brief), for Commissioner.

Before GOODRICH, McLAUGHLIN and STALEY, Circuit Judges.

STALEY, Circuit Judge.

Does a recognizable gain accrue to a taxpayer where pursuant to a prearranged plan he mortgages real estate and receives therefor an amount in excess of the property's adjusted basis under Section 111(b) of the Internal Revenue Code

of 1939,[1] and shortly thereafter transfers the property without consideration but subject to the mortgage?

The facts as found by the Tax Court, stipulated in part, may be summarized as follows:

In 1941 Joseph B. Simon, petitioner,[2] purchased the RKO Building ("property") in Philadelphia, Pennsylvania, for $104,220.45. On September 28, 1951, he placed a mortgage on it not involving personal liability and received therefor $120,000. On December 27, 1951, the petitioners conveyed the property subject to the mortgage to Exco Corporation ("Exco"), and shortly thereafter, Exco conveyed the same property to Penn-Liberty Insurance Company ("Penn-Liberty").

The petitioners' joint income tax return for the year 1951 did not show receipt of the mortgaged proceeds or reflect in any way the conveyance of the property to Exco. The Commissioner determined that these transactions constituted a sale from which the petitioner realized a long-term capital gain in the amount of $35,108.33 for the taxable year 1951.[3] A tax deficiency in the amount of $10,715.94 was assessed against the petitioners, together with an addition to tax in the amount of $824.41 for substantial underestimation under Section 294(d)(2) of the Internal Revenue Code of 1939.[4] The Tax Court sustained the Commissioner's determination, except that it reduced the taxable gain by $901.78, which represented the November and December, 1951, payments towards the mortgage debt, thereby requiring a recomputation of the deficiency.[5]

In this court the petitioner does not assail the facts, largely stipulated, as found by the Tax Court, but only its ultimate finding that a sale took place, asserting that "there are no facts to support the Court's conclusion that a 'sale', or any other kind of taxable disposition, took place." The Tax Court's conclusion that the mortgage and subsequent conveyance to Exco was a sale is, of course, an ultimate finding of fact which this court can review free of the restraint imposed by the clearly-erroneous rule applicable to ordinary findings of fact. Philber Equipment Corp. v. Commissioner, 3 Cir., 1956, 237 F.2d 129. But that does not end the matter, for as we said in Pennroad Corp. v. Commissioner, 3 Cir., 1958, 261 F.2d 325, 328, certiorari denied sub nom. Madison Fund, Inc. v. Commissioner, 1959, 359 U.S. 958, 79 S.Ct. 797, 3 L.Ed.2d 766, "where the ultimate fact reasonably flows from the basic facts and especially where the basic facts are persuasive of the ultimate fact so found, this court will not disturb the finding of the trial court." See also Heebner v. Commissioner, 3 Cir.,

1. "§ 111. Determination of amount of, and recognition of, gain or loss.

\* \* \* \* \*

"(b) Amount realized. The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received." 26 U.S.C.A. (Int.Rev.Code of 1939) § 111(b).

2. Joseph B. Simon and Josephine L. Simon are petitioners. Where the word "petitioner" is used, it will refer to Joseph B. Simon only. Josephine L. Simon is a party and one of the petitioners only because she filed a joint return with the petitioner, her husband, for the taxable year 1951.

The Commissioner has also filed a petition for review, asking us to pass on issues raised by an amended answer that he filed in the Tax Court in which he sought, in the alternative, an increased deficiency on the theory that if the petitioner disposed of the property other than by sale or exchange, any gain realized would be ordinary income rather than a capital gain. Because of our disposition of this cause, we, like the Tax Court, find it unnecessary to reach this issue.

3. Section 117, Internal Revenue Code of 1939, 26 U.S.C.A. (Int.Rev.Code 1939) § 117.

4. The assessment of the penalty was not contested below or in this court.

5. Joseph B. Simon, 1959, 32 T.C. 935.

1960, 280 F.2d 228; August v. Commissioner, 3 Cir., 1959, 267 F.2d 829.

In our evaluation of the evidence before the Tax Court to determine its persuasiveness of that court's conclusion, we are guided in part by what was said in Commissioner of Internal Revenue v. Court Holding Co., 1945, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981:

" * * * The incidence of taxation depends upon the substance of a transaction. The tax consequences which arise from gains from a sale of property are not finally to be determined solely by the means employed to transfer legal title. Rather, the transaction must be viewed as a whole, and each step, from the commencement of negotiations to the consummation of the sale, is relevant. A sale by one person cannot be transformed for tax purposes into a sale by another by using the latter as a conduit through which to pass title. To permit the true nature of a transaction to be disguised by mere formalisms, which exist solely to alter tax liabilities, would seriously impair the effective administration of the tax policies of Congress."

During 1951 Penn-Liberty was confronted with a deteriorating financial condition caused by substantial losses arising from claims for hurricane damage which had occurred at the end of 1950. The petitioner, Charles Denby, and officers of Penn-Liberty discussed this situation and agreed to a plan whereby the property in question would be mortgaged and thereafter conveyed, subject to the mortgage, to Penn-Liberty to help maintain its legal reserves. The interest shown by petitioner and Denby in Penn-Liberty's plight was understandable. Petitioner was president of Exco and treasurer of Penn-Liberty, while Denby served as treasurer of Exco. Together, they owned and controlled Exco, which in turn owned Penn-Liberty.[6]

The petitioner proceeded to execute the plan. Either because Penn-Liberty did not require a contribution equal to the full value of the property, or because the petitioner was unwilling to make a contribution for that amount, he mortgaged the property on September 28, 1951, for $120,000. The petitioner used $79,587.27 of the mortgage proceeds to satisfy two prior mortgages and pay closing costs, and reduced the principal debt to $119,098.22 by making payments thereon in November and December, 1951, retaining $40,412.73 of the proceeds.

On December 27, 1951, when the property had an adjusted basis of $82,205.17, the petitioners conveyed it to Exco, and immediately thereafter, on December 31, 1951, petitioner, as president of Exco, signed a deed conveying the same property to Penn-Liberty. In both instances the property was conveyed subject to the mortgage for a recited but never paid consideration of $100.

Petitioner testified and he here contends that he intended the conveyance to be a contribution to capital meant to improve Penn-Liberty's financial condition. He also maintains that neither that conveyance nor the placing of the mortgage and retention of part of the proceeds can constitute separately or together a taxable event. However, in determining the true nature of the transaction based on the mortgage and subsequent conveyances, the Tax Court was free to draw its own conclusion from the evidence as a whole, not being bound by the interested

6. In 1951, petitioner and Denby held the following stock in Exco:

| | No. of Shares | |
| --- | --- | --- |
| | Common Stock | Preferred Stock |
| Petitioner | 100 | 1,750 |
| Charles Denby | 100 | 1,750 |
| Penn-Liberty Insurance Co. | None | 1,000 |

though uncontradicted testimony of the taxpayer. Heil Beauty Supplies, Inc. v. Commissioner, 8 Cir., 1952, 199 F.2d 193.[7]

Taxpayer may very well have intended to and probably did improve Penn-Liberty's financial condition by the method employed, for at the time of the conveyance to Penn-Liberty, the property was entered on its books as an asset with an appraised value of $242,800 (less the unpaid principal on the mortgage and $471.43 accrued interest), which was well in excess of the mortgage for $120,000. It thus appears that these transactions served as a means of fulfilling petitioner's intentions while simultaneously returning to him an amount in excess of his then existing investment in the property.

It is immaterial, we think, that in financing the transaction the mortgage was negotiated for and placed by the petitioner prior to the transfer rather than by the purchaser-transferee as is the usual practice. As a matter of fact, when the petitioner gave the mortgage on September 28, 1951, he was at that time president of Exco and treasurer of Penn-Liberty, acting in pursuance of a plan agreed to by both corporations. It would certainly not be untenable to conclude that at the time petitioner gave the mortgage, he was already acting as an agent for both Exco and Penn-Liberty in securing the loan, the proceeds of which would in turn be used to purchase the property from him in his individual capacity.

The time interval between the various steps leading up to the subsequent conveyance to Penn-Liberty and the petitioner's testimony that it was a "Penn-Liberty deal" from the beginning fully support the Tax Court's conclusion that it was a single integrated transaction[8] and constituted a sale. In fact, it seems to us that this conclusion is the only plausible one. See Smyth v. Sullivan, 9 Cir., 1955, 227 F.2d 12; Jacobs v. Commissioner, 9 Cir., 1955, 224 F.2d 412; Century Electric Co. v. Commissioner, 8 Cir., 1951, 192 F.2d 155, certiorari denied 1952, 342 U.S. 954, 72 S.Ct. 625, 96 L.Ed. 708.

Petitioner relies on Mendham Corp., 1947, 9 T.C. 320, and Woodsam Associates, Inc. v. Commissioner, 2 Cir., 1952, 198 F.2d 357, which we think are not in point. Neither of these cases was concerned with the tax liability of the transferor, for both involved a transfer of property to a corporation for stock under Section 112(b) (5) of the Internal Revenue Code of 1939, 26 U.S.C.A. (I.R.C. 1939) § 112(b) (5), whereby no gain or loss was to be recognized. Our conclusion also makes inapplicable Crane v. Commissioner, 1947, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301, and Parker v. Delaney, 1 Cir., 1950, 186 F.2d 455, certiorari denied 1951, 341 U.S. 926, 71 S. Ct. 797, 95 L.Ed. 1357, where the mortgaging of the property and its subsequent disposition by the mortgagor or his successor were unrelated. The Court in Crane was faced solely with the question of determining the adjusted basis of real estate. Here there is no dispute as to the property's adjusted basis.

The decision of the Tax Court will be affirmed.

---

7. No proof was introduced in the Tax Court showing that any other shareholder in either Exco or Penn-Liberty made a matching contribution, nor what effect petitioner's contribution had on his proportionate ownership of either of these corporations.

8. Whether for tax purposes several acts constitute separate and distinct transactions or are integrated steps in a single transaction is a question of fact. Jacobs v. Commissioner, 9 Cir., 1955, 224 F.2d 412, 413.