**FIRST NATIONAL INDUSTRIES, INC.,**
Petitioner,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Respondent.

No. 18208.

United States Court of Appeals
Sixth Circuit.

Dec. 26, 1968.

William Waller, Nashville, Tenn., for petitioner, Robert G. McCullough, Nashville, Tenn., on the brief, Waller, Lansden, Dortch & Davis, Nashville, Tenn., of counsel.

Jonathan S. Cohen, Atty., Dept. of Justice, Washington, D. C., for respondent, Mitchell Rogovin, Asst. Atty. Gen., Meyer Rothwacks, Elmer J. Kelsey, Attys., Dept. of Justice, Washington, D. C., on the brief.

Before PECK, McCREE and COMBS, Circuit Judges.

JOHN W. PECK, Circuit Judge.

A preliminary statement of the facts of this case in summary form may be of assistance. This appeal from the Tax Court results from its allowance of a deficiency assessment made on the basis of what the Commissioner contends (and the Tax Court found) to be a capital gain. The taxpayer is one of six corporations owned or controlled by a seventh, itself a nonprofit charitable [1] corpora-

---

1. This corporation (Church of Christ Foundation, Inc.) was ruled exempt from tax under Section 101(6), Internal Revenue Code of 1939, by letter of respondent dated January 5, 1948. However, by letter dated March 6, 1961, the Chief, Exempt Organizations Branch, Tax Rulings· Division of the Internal Revenue Service, advised that the Service was proposing to issue a ruling holding that the corporation was not exempt under Sec-

tion 501(c) (3), Internal Revenue Code of 1954. By letter dated November 14, 1961, the Director of the Tax Rulings Division, IRS, advised the corporation that its exemption had been revoked retroactively to the year 1955. The status of the corporation is not in issue here, there being no present contention that petitioner is entitled to a deduction on account of a donation to a charitable organization.

tion. After pledging a thousand shares of stock in an entirely separate company with a bank as collateral for a $750,000 loan, it "gave"[2] the stock to its parent (charitable) corporation. The latter thereafter sold the stock to its issuing company and pledged that company's note to secure taxpayer's bank indebtedness. The charitable corporation subsequently sold that note to the bank for $700,000, advanced that sum to one of the other companies (100% of whose stock it owned), which then made payments to three of the other subsidiaries to pay off indebtednesses, and they in turn paid the $700,000 to taxpayer on account of their obligations to it. Taxpayer then paid off its note to the bank with the $700,-000.

The Tax Court found that all plaintiff contributed to its parent charitable corporation was its equity in the stock since it remained pledged to the bank, and further found that taxpayer had realized a $600,000 capital gain. This figure was reached by crediting the $100,000 basis on which petitioner held the stock against its $700,000 valuation at the time of the transfer.

Respondent determined a deficiency in petitioner's income tax for the fiscal year ending January 31, 1959, in the amount of $152,024.93 on the basis of the determination that petitioner realized a long-term capital gain on the transfer of stock hereinabove mentioned. That stock consisted of 1,000 shares of B. G. Wholesale, Inc. That corporation had been formed by G. L. Comer and Ervin G. Houchens, on the basis of a cash contribution in the amount of $100,000 by Comer and of certain stores and stock in trade of a total valuation of $100,000 by Houchens. This corporation operated retail grocery stores under the name of Houchens Markets, and following its incorporation in 1944 Comer transferred the 1,000 shares of stock received for his corporation to several corporations controlled by him. In 1948 they were transferred to First Na-

tional Company which at that time Comer owned, and in 1950 that company transferred the shares to Merchants Warehouse Company, also owned by Comer, for $100,000, and in 1955 it transferred the shares to petitioner for $100,-000.

On December 10, 1957, petitioner obtained a loan of $750,000 from the First American National Bank of Nashville, Tennessee, on a note secured by the pledge of the 1,000 shares of common stock in B. G. Wholesale, Inc. Its books and records reflect that that stock was donated by it to Church of Christ Foundation, Inc. (hereinabove referred to as a nonprofit charitable corporation and hereinafter as the Foundation) on February 28, 1958. On that date petitioner's board of directors passed a resolution directing a transfer of the stock to the Foundation, and on the same day the trustees of the Foundation passed a resolution pledging the shares to the First American National Bank of Nashville to secure petitioner's indebtedness. The stock was transferred into the Foundation's name on the books of the issuing corporation, having been temporarily released by the bank so that this transfer could be made.

At all pertinent times since its incorporation in 1955, 87% of the outstanding stock of the petitioner was owned by First National Company, a private business corporation, the common stock of which was owned by the Foundation. This corporation was a holding company and among its holdings were the entire outstanding capital stock of four garment manufacturing corporations, Blue Ridge Shirt Mfg. Co., Dixie Mfg. Co., Mammoth Cave Garment Co. and McEwen Mfg. Co. Petitioner owned garment making machinery which it leased to these manufacturing companies.

The Foundation sold the stock in question to the issuing corporation, B. G. Wholesale, Inc., for redemption on May

2. It is the character of this transaction which is at the heart of the principal issue presented; petitioner claims this to have been a gift, while respondent contends it was merely a transfer.

31, 1958, pursuant to a contract of sale dated May 27, 1958. The redemption price was $955,374.29 of which $250,000 was paid in cash and a promissory note was executed for the balance in the amount of $705,374.29. The Foundation promptly paid the $250,000 to First National Company, to be applied on its indebtedness in a larger amount to this subsidiary corporation. First National Company, in turn made payments on indebtedness it owed to the four manufacturing corporations above referred to, which then paid, in the aggregate, $250,000 owing by them to the petitioner. Petitioner, in turn, made its payment of $250,000 on the note to the bank. Thus a series of debts were reduced or liquidated by this money, but this series of transactions are not directly involved in this action. Additionally, petitioner had made a payment on this note in the amount of $100,000, so that the remaining balance was $400,000.

On October 9, 1958, petitioner consolidated the $400,000 note with another outstanding note in the amount of $200,000, and received $100,000 of newly borrowed cash. Subsequently, in a taxable year not before the Court, the Foundation sold the $705,374.29 note executed by B. G. Wholesale, Inc., to the bank, and out of the proceeds of that sale advanced $700,000 to its subsidiary, First National Company, thereby initiating a second series of payments. It in turn made payments in this aggregate amount to three of the four manufacturing corporations above referred to and in payment of indebtednesses. They in turn paid an aggregate of $700,000 on their indebtednesses to the petitioner, and it paid off its note to the bank in the amount of $700,000. It is this $700,000 which respondent contends was realized by petitioner from the "gift" of the stock to the Foundation on February 28, 1958, and which resulted in a capital gain of $600,000 since, as demonstrated above, it held the stock on a $100,000 basis. In her findings of fact the tax judge pointed out that the books and records of petitioner and the other companies owned or controlled by Comer

or the Foundation with which it had transactions "were kept in the ordinary courses of the respective businesses * * * and the various entries were made in the ordinary courses of business of those corporations." The findings point out that these corporations had intercompany transactions resulting in indebtednesses and that they customarily borrowed from or made advances to one another. Judge Scott further made this specific finding:

"The revenue agent who examined the books and records of the Foundation and of petitioner and of a number of the other corporations referred to in these findings found the books and records of the various corporations in excellent shape and found intercompany transactions meticulously reported. He found no attempt to cover up or hide any transactions. Payments by one of the various companies to another of those companies, including those heretofore set out, were made by checks drawn on the bank account of the company making the payment."

As is apparent from the foregoing, that an appreciation in the value of the B. G. Wholesale, Inc. stock occurred is not in question. The success and the expansion of the Houchens Markets brought about this increase in value, and buy or sell offers between Comer and Houchens followed. It was the acceptance of such an offer that resulted in the redemption of the stock at a price determined under a formula which was a part of the contract.

Had the Foundation formally assumed taxpayer's $700,000 debt and paid it off, there would have been no question but that there would have been a taxable event and a realization of income by petitioner. However, it is to be noted that although the Foundation did not formally assume petitioner's indebtedness to the bank, it took the B. G. Wholesale, Inc. stock subject to the indebtedness under circumstances, the Tax Court found, amounting to "an understanding and agreement that in effect the stock or proceeds from its sale would be used to

discharge petitioner's indebtedness to the bank. \* \* \* "

■ Where a taxpayer, to discharge an obligation, transfers property which has appreciated in value a gain from the transfer is realized to the extent that the value of the obligation discharged exceeds his basis in the property. A donor taxpayer is not chargeable for income on account of a gift of property which has appreciated in value over the base at which he held it (Humacid Co., 42 T.C. 894, 913 (1964)), but where donated property continues to be subject to a mortgage a gain may result to the donor under certain circumstances. Joseph B. Simon, 32 T.C. 935 (1959), aff'd, 285 F.2d 422 (3rd Cir. 1960). Since the amount of the mortgage on property is part of its sale price even though the purchaser does not assume the mortgage (Crane v. Commissioner of Internal Revenue, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947)), because the purchaser will be required in some way to discharge the mortgage, a transfer of property subject to such a mortgage may in substance constitute a receipt by the transferor of the amount of the mortgage on the property if the transferee does in fact pay the indebtedness secured by the mortgage. Petitioner argues that since the Foundation did not here in fact pay the note secured by the B. G. Wholesale, Inc. stock transferred to it by petitioner, the foregoing principal is without application. This argument must depend upon petitioner's self-serving statement that it contributed *the stock* to the Foundation and not merely *petitioner's equity* in the stock. All petitioner had, however, at that time was the ability to contribute its equity in view of the fact that the stock was pledged with the bank to secure the $750,000 note, and the passage of a resolution by petitioner's board of directors could not alter that fact.

■ Petitioner remained the obligor on the note and ultimately paid the note with funds which came into its hands from the sale of the stock. However, this indirect advance by the Foundation to petitioner of funds with which the note to which the stock was affixed as security did not occur until after the end of petitioner's fiscal year (January 31, 1959). Thus while the transfer of the stock occurred within the taxable year with which we are here concerned the Foundation did not hold the stock free of its assignment to the bank as security for petitioner's loan at any time within that year. Stated differently, at no time during the taxable year in question did the Foundation possess more than petitioner's equity in the subject stock. In spite of the ramifications and complexities of the intracorporate transactions, so far as the purported gift to the Foundation is concerned in the last analysis we find a situation no different than that which would have existed had petitioner made a "gift" to a stranger of the stock while pledged as security on the note. In such instance it is clear that the donee could take no more interest than that possessed by the donor, and in the present circumstances the Foundation can acquire only that interest. We hold that the determination of the Tax Court that the transaction whereby petitioner transferred the stock to the Foundation was a sale by petitioner of the stock for an amount of at least $700,000 [3] and that petitioner thereby realized a capital gain from the transaction in its fiscal year ended January 31, 1959, to be supported by substantial evidence and not clearly erroneous.

■ Our determination that the principal transaction herein involved is basically equivalent to a sale (Section 1001 of the Internal Revenue Code of 1954), makes it unnecessary to consider the further contention of the government that the transfer of stock to the Foundation was a distribution in kind resulting in a taxable gain under Section 311(c) of the Internal Revenue Code of 1954.

Affirmed.

---

3. Respondent is not contending for any greater capital gain than the $600,000 as determined in the notice of deficiency.