TEOFILO AND FRANCES EVANGELISTA, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 3808–76. Filed March 27, 1979.

---

*Frank A. Ross, Jr.*, for the petitioners.
*Edward J. Roepsch*, for the respondent.

## OPINION

SCOTT, *Judge:* Respondent determined deficiencies in petitioners' income taxes for the calendar years 1972 and 1973 in the amounts of $5,834.66 and $12,126.89, respectively. By amendment to answer, respondent claimed an increased deficiency for the calendar year 1973 in the amount of $1,250.14, making the total deficiency in tax involved for that year $13,377.03.

Some of the issues raised by the pleadings have been disposed of by the parties, leaving for our decision only whether petitioner Teofilo Evangelista realized income represented by the difference in his basis in 33 Matador automobiles and the encumbrance on those automobiles for which he was personally liable upon transfer of the automobiles to a trust for his children, with the trustee assuming primary liability for the payment of the encumbrance on the automobiles, which encumbrance was subsequently paid by the trustee.[1]

All of the facts have been stipulated and are found accordingly.

Petitioners, who resided in Appleton, Wis., at the time of the filing of the petition in this case, filed joint Federal income tax

---

[1] Since the reduction in basis of the automobiles resulted from petitioner's having claimed and been allowed 1 year's depreciation thereon on a double declining balance method, using a 3-year useful life, respondent alleged in his amendment to answer that the gain upon transfer of the automobiles to the trust constituted depreciation recaptured and therefore was ordinary income under sec. 1245, I.R.C. 1954. Apparently petitioners do not contest the determination of respondent that the gain constitutes ordinary income under sec. 1245 if we conclude that, in fact, petitioner did realize a gain on the transaction.

returns for the calendar years 1972 and 1973 with the Internal Revenue Service Center, Kansas City, Mo.

On July 24, 1972, Teofilo Evangelista (hereinafter petitioner) purchased 33 Matador automobiles at a cost of $102,670 from the GOMA Corp. (GOMA), Madison, Wis. These 33 Matador automobiles were subject to an existing lease with an agency of the U.S. Government at the time they were purchased by petitioner. The purchase agreement, which was entitled "Automobile Sale and Lease Agreement," recited that the automobiles were under lease and provided that the purchaser (petitioner) appointed GOMA as trustee to hold legal title to the vehicles, to receive the proceeds of the lease on behalf of the purchaser, and to administer the receipts of payments and provide for the obligation of the purchaser under the terms of the lease, a copy of which was attached to the agreement.

The automobile sale and lease agreement between petitioner and GOMA further provided as follows:

3. * * * Purchaser does further appoint GOMA Corp. as trustee to receive payments and to transmit the same to The Park Bank, Madison, Wisconsin on behalf of Purchaser, and shall receive the lease payments shown on Exhibit "B" attached hereto, said lease payments being hereby assigned to Purchaser by virtue of this sale agreement. GOMA, as trustee, shall likewise transmit to Goben Cars, Inc. the $24/mo/vehicle maintenance fee out of said lease proceeds.

4. The Purchaser does appoint GOMA Corp. to act as trustee to obtain the public liability and property damage insurance required by the agreement with the United States Government in the amounts prescribed by the agreement with the United States Government.

5. As trustee, the GOMA Corp. shall do all things necessary to administer the contract with the United States Government including the submission of proper invoices and vouchers on the dates provided for in said agreement with the United States Government, and shall further submit any other required affidavits, such as price stabilization affidavits, insurance coverage affidavits, and any other and all certificates that may be required in accordance with the terms of said agreement with the United States Government.

6. At the termination of said lease agreement, the said trustee shall regain possession of said vehicles on behalf of this Purchaser and shall dispose of the same in accordance with the terms of that repurchase agreement which presently exists between GOMA Corp. and Goben Cars, Inc., the rights under which are hereby assigned to the undersigned Purchaser. GOMA does hereby guarantee to maintain said vehicles for the sum of $24.00/month per vehicle during this lease. GOMA does hereby assign to Purchaser the benefit of that agreement between Don Goben, GOMA and Goben Cars, Inc., dated May 30, 1972.

On July 24, 1972, petitioner executed a promissory note paya-

ble to the Park Bank, Madison, Wis., in the amount of $106,000. Petitioner was personally liable to the Park Bank for the payment of the promissory note. That bank, as security for payment of the note, held a purchase-money consensual security interest in the 33 Matador automobiles purchased by petitioner from GOMA. The note provided for payment of interest at the rate of 9 percent per year.

Petitioner, on his 1972 Federal income tax return, claimed $34,233.33 for depreciation expense on the 33 Matador automobiles for 6 months computed under the double declining balance method, using a 3-year useful life. He reported rental income of $24,810.62 from auto leasing for 1972, with a resultant net rental loss of $9,422.71. On his 1973 Federal income tax return petitioner, who had transferred his interest in the automobiles on July 3, 1973, to a trust, claimed $34,233.33 of depreciation expense on the 33 Matador automobiles for 6 months on the double declining balance method, using a 3-year useful life. He reported rental income for 1973 from the 33 Matador automobiles of $23,570, with a resultant net rental income loss with respect to these automobiles for 1973 of $10,663.33. On his 1973 Federal income tax return, petitioner claimed a deduction for interest paid to Park Bank of $4,475.09.[2] Petitioner's adjusted basis in the 33 Matador automobiles on July 3, 1973, was $34,203.34.

On July 3, 1973, petitioner irrevocably transferred all his right, title, and interest in the 33 Matador automobiles and related lease to a trust for the sole benefit of his children, Marie and Michelle Evangelista. Petitioner Frances Evangelista was the sole trustee of the trust at the time of the transfer. On July 3, 1973, Frances Evangelista, as trustee of the trust, assumed primary liability for the payment of the balance of the encumbrance on the 33 Matador automobiles. On this date, the remaining balance owed to the Park Bank on the note obtained to purchase the automobiles was $62,603.36, and this was the amount assumed by Frances Evangelista as trustee. Frances Evangelista, as trustee for the trust created by petitioner, subsequently paid the $62,603.36 encumbrance.

With the exception of the assumption of primary liability and

---

[2]On petitioner's 1972 tax return, he claimed an interest expense deduction under the designation "investment—rental property" of $7,857.72. There is no breakdown on the return to show what amount of this deduction was interest paid to the Park Bank with respect to the loan secured by the 33 Matador automobiles.

subsequent payment of the balance of the encumbrance of $62,603.36 on the 33 Matador automobiles by Frances Evangelista as trustee for the trust, petitioner did not receive cash or other property in exchange for the transfer of his right, title, and interest in the 33 Matador automobiles and related lease to the trust.

Respondent, in his notice of deficiency to petitioners, determined that the 33 automobiles purchased in 1972 and the 20 automobiles purchased in 1973[3] had a useful life of 1 year instead of 3 years, and for that reason the double declining balance method for depreciation was not allowable and depreciation was computed on a straight-line method, taking into account a reasonable salvage value.

Pursuant to motion previously granted, respondent, on March 31, 1977, filed an amendment to answer in which he claimed an increased deficiency on the basis of allegations of fact with respect to the acquisition by petitioner of the Matador automobiles and the transfer of these automobiles by petitioner to a trust for his children. Paragraph G of respondent's amendment to answer contains the following allegation:

On July 3, 1973, petitioner Teofilo Evangelista realized income and taxable gain as follows as the result of said transfer:

| | |
|---|---|
| Cost of vehicles | $102,670.00 |
| Depreciation per return | 68,466.66 |
| Adjusted basis | 34,203.34 |
| | |
| Indebtedness realized | 62,603.36 |
| Adjusted basis | 34,203.34 |
| Gain | 28,400.02 |

The said $28,400.02 gain is ordinary income as the result of the depreciation recapture pursuant to *Int. Rev. Code of 1954*, sec. 1245.

On March 27, 1978, the parties filed with the Court a stipulation with regard to settled issues in which they agreed that the sole issue for decision in this case is whether petitioners realized income upon the transfer by Teofilo Evangelista of certain encumbered vehicles to a trust in 1973, as alleged by respondent in

---

[3]Petitioner's tax return for 1973 showed that he acquired 20 Chevrolet Nova automobiles in 1973 which were under a lease.

his amendment to answer. They further stipulated that there is no deficiency in income tax due from, or overpayment due to petitioners for the taxable year 1972.

Petitioner, relying on *Turner v. Commissioner*, 49 T.C. 356 (1968), affd. per curiam 410 F.2d 752 (6th Cir. 1969), and *Edwards v. Greenwald*, 217 F.2d 632 (5th Cir. 1954), argues that the transaction here involved was a "net gift" and therefore petitioner realized no income from the assumption by the trust of petitioner's $62,603.36 indebtedness. Respondent makes a twofold argument. First, he argues that our holding in *Turner v. Commissioner, supra*, and in the cases of *Krause v. Commissioner*, 56 T.C. 1242 (1971); *Estate of Davis v. Commissioner*, T.C. Memo. 1971–318, affd. per curiam 469 F.2d 694 (5th Cir. 1972); *Hirst v. Commissioner*, 63 T.C. 307 (1974), affd. 572 F.2d 427 (4th Cir. 1978); and *Estate of Henry v. Commissioner*, 69 T.C. 665 (1978), on appeal (6th Cir., May 5, 1978), in which we followed our holding in the *Turner* case, are incorrectly decided and should not be followed.

Respondent's second argument is that petitioner received consideration of $62,603.36 for the transfer to the trust of vehicles with an adjusted basis to him of $34,203.34, thereby realizing a gain of the difference. Respondent, in support of this argument, relies on the holding in *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716 (1929), that a taxpayer realizes income to the extent his personal liability or indebtedness is assumed or paid by another, and the holding in *Crane v. Commissioner*, 331 U.S. 1 (1947), that an encumbrance on property satisfied by the transfer of that property is a part of the consideration received for the property.

The case of *Edwards v. Greenwald, supra*, relied upon by petitioner, is distinguishable on its facts from the instant case. That case involved a question of taxability of trust income to the grantor where the facts showed that the primary liability for an indebtedness incurred in the purchase of the trust corpus was on the trustee of the trust acquiring the property and a contingent liability only on the settlors. The instant case involves whether petitioner realized a gain on the transfer of encumbered property where he was personally liable for the indebtedness.

In our view, *Turner v. Commissioner, supra*, and the numerous cases following the holding in the *Turner* case are also distinguishable from the instant case. Each of those cases involved

the issue of whether an agreement by the donee to pay the gift tax on the transfer of property by gift resulted in income to the donor where the basis of the property donated was less than the gift tax liability assumed and paid by the donee. In reaching the conclusion in each of those cases that in effect a net gift had been made resulting in no income to the donor, we pointed out that the gift tax liability of the donor came into being as a part of the gift transfer, resulting in no financial benefit to the donor. In *Hirst v. Commissioner, supra,* we discussed in detail the development of the case law with respect to gifts made with the understanding that the donee would pay the gift tax liability. Before proceeding with this discussion we stated (at page 310) that "the discharge of a solvent taxpayer's liability is ordinarily regarded as conferring a benefit upon him which may furnish the basis for taking it into account in the computation of taxable income. Cf. *Douglas v. Willcuts,* 296 U.S. 1." In the *Hirst* case we recognized the force of the Government's argument, but concluded (at page 315) that "Things have gone too far by now to wipe the slate clean and start all over again." Again, in *Estate of Henry v. Commissioner, supra* at 669, we reviewed the cases dealing with the income tax consequences "to a donor of appreciated property where the gift is conditioned upon the donee's payment of the gift tax resulting from the transfer." In reaching the conclusion to follow the precedents in prior cases, we stated (at page 675) that—

under the principle of stare decisis and fair play with a taxpayer who has relied upon our prior opinions, which opinions have been affirmed by higher courts or in respect of which appeals have been dismissed, we must follow the *Turner* case and hold that petitioner did not realize taxable income as a result of the conditional transfers here in dispute.

In both the *Hirst* and *Estate of Henry* cases, we distinguished *Johnson v. Commissioner,* 59 T.C. 791 (1973), affd. 495 F.2d 1079 (6th Cir. 1974), by pointing out that the *Johnson* case involved significant differences in facts from the cases involving transfers of appreciated property conditioned upon the donee's paying the gift tax. One of these differences was that the liability of the donor arose only upon the transfer of the property by gift in cases such as *Turner* and *Hirst,* whereas in the *Johnson* case as in the instant case, the transferor's liability arose before the transfer of the property by gift. In the instant case, the liability

which was assumed upon transfer and the transaction giving rise to the liability had resulted in a tax benefit to petitioner.

Since, in our view, the instant case is distinguishable on its facts from the *Turner, Krause, Estate of Davis, Hirst,* and *Estate of Henry* cases, we will not reconsider our holdings in those cases but proceed to determine this case on the basis of respondent's second argument.

As was held in *Old Colony Trust Co. v. Commissioner, supra,* the discharge by another person of an obligation of a taxpayer is equivalent to receipt of that amount by the taxpayer whose obligation is discharged. The *Old Colony Trust Co.* case involved the payment by an employer of an employee's income tax. However, the same principle has been applied to the economic gain derived from a discharge or assumption of an indebtedness of a solvent taxpayer. *Smith v. Commissioner,* 324 F.2d 725, 726 (9th Cir. 1963), affg. a Memorandum Opinion of this Court. As the court there pointed out, the assumption of personal obligations of the taxpayer by a solvent third person may be treated as money received by the taxpayer "within the meaning of Section 1001(b) of the 1954 Code, to the amount of the obligations assumed. Cf. Crane v. Commissioner, 331 U.S. 1, 12–14." See also *Malone v. United States,* 326 F.Supp. 106, 112 (N.D. Miss. 1971), affd. per curiam 455 F.2d 502 (5th Cir. 1972), and cases cited therein at note 12.

The instant case involves an issue more comparable to that involved in *Johnson v. Commissioner, supra,* than the issue involved in the *Turner, Krause, Estate of Davis, Hirst,* and *Estate of Henry* cases. Petitioner attempts to distinguish the *Johnson* case on the ground that in the *Johnson* case the loan was placed on the appreciated property shortly before the transfer of the property by gift, and the proceeds of the loan were used by the transferor of the property as he saw fit. The *Johnson* case contains a discussion of the fact that the proceeds of the loan were used by the donor as he saw fit, but, in our view, that does not distinguish the *Johnson* case from the instant case. Here, the proceeds of the loan secured by the 33 Matador automobiles were used to acquire the property transferred which was the use petitioner saw fit to make of the loan proceeds. Petitioner received substantial benefits from the transaction for which the loan proceeds were used. Depreciation deductions in excess of

the rental income received by petitioner were taken in 1972 and 1973, resulting in a tax benefit to petitioner.[4] In the *Johnson* case, the taxpayer was not personally liable on the indebtedness assumed. Petitioner was liable on his indebtedness assumed by the trust. Therefore, the facts here are distinguishable· from those in the *Turner, Hirst,* and similar cases on a further ground not present in the *Johnson* case.

Petitioner, in arguing for a net gift, contends that he made a gift of the excess of the value of the automobiles over the obligation assumed by the trust. Nothing in this record shows the value of the automobiles at the date they were transferred by petitioner to the trust. However, as we held in *Millar v. Commissioner,* 67 T.C. 656, 660 (1977), affd. on this issue and revd. in part on another issue 577 F.2d 212 (3d Cir. 1978), where a sale or exchange of property is made for extinguishment of an indebtedness and the indebtedness exceeds the adjusted basis of the surrendered property, the value of the property is immaterial in determining the gain realized by the transferor of the property. Regardless of the value of the automobiles transferred by petitioner to the trust, petitioner received a gain from the extinguishment of the debt for which he was personally liable, which debt exceeded by over $28,000 his basis in the automobiles transferred. The fact that the transfer was designated a "gift" by petitioner is immaterial. Petitioner received value upon the transfer of the automobiles by having his indebtedness of over $62,000 extinguished. Petitioner's basis in the automobiles was only $34,203.34. Therefore, petitioner realized a gain on the transfer which cannot be ignored merely because he denominated the transfer of the automobiles as a gift.

As we pointed out in *Estate of Franklin v. Commissioner,* 64 T.C. 752, 763 (1975), affd. 544 F.2d 1045 (9th Cir. 1976), the nature of a transaction depends upon what the parties actually did rather than the language used in the documents surrounding the transaction. Here, petitioner received consideration of $62,603.36 by way of assumption by the trust of an indebtedness on which he was personally liable for the transfer to that trust of property

---

[4]It appears from this record that petitioner had not expended any funds—other than the loan proceeds and rental receipts—to pay towards the loan when the vehicles were transferred to the trust. Petitioner borrowed $106,000. He had received net rent of $48,380.62. On July 3, 1973, the remaining balance on the indebtedness was $62,603.36, indicating payments on principal of $43,396.64, leaving $4,983.98, plus the excess of the $106,000 over the purchase price of the vehicles, with which interest could be paid. It is noted that GOMA Corp. collected the rent and made the payments on the note.

in which he had a basis of $34,203.34. Calling the transfer a gift does not change its nature so as to warrant a conclusion that petitioner did not receive gain from the transfer.

Although we have found no case with facts totally comparable to those in the instant case, a number of cases have held transactions denominated as gifts or contributions to capital to result in gain to a taxpayer where an indebtedness in excess of the taxpayer's basis in the property transferred was assumed by the transferee. See *First National Industries, Inc. v. Commissioner*, 404 F.2d 1182 (6th Cir. 1968), affg. a Memorandum Opinion of this Court; *Simon v. Commissioner*, 32 T.C. 935 (1959), affd. 285 F.2d 422 (3d Cir. 1960).[5]

In *First National Industries, Inc. v. Commissioner, supra*, the court (at page 1186) pointed out that although a donor is not chargeable for income on account of a gift of property that has appreciated in value over the base at which the donor held it, a gain may result to the donor where the donated property continues to be subject to a mortgage, since the amount of a mortgage on property is part of its sales price even where the purchaser does not assume the mortgage. *Crane v. Commissioner*, 331 U.S. 1 (1947).[6] The court concluded that where a taxpayer made a gift of property subject to a mortgage, all that the taxpayer had to give was his equity in that property. The court further stated, in concluding that the taxpayer involved in the *First National Industries, Inc.*, case realized gain upon the contribution to a foundation of property pledged to secure an indebtedness of the donor, that "at no time during the taxable year in question did the Foundation possess more than petitioner's equity in the subject stock." In circumstances somewhat similar to those here involved, the court, in the *First National Industries, Inc.*, case, recognized that the donor of property realized gain upon the assumption of its indebtedness in excess of its loans on

---

[5]See also *Magnolia Development Corp. v. Commissioner*, T.C. Memo. 1960–177.

[6]See the following statement in *Crane v. Commissioner*, 331 U.S. 1, 13 (1947):

"Petitioner concedes that if she had been personally liable on the mortgage and the purchaser had either paid or assumed it, the amount so paid or assumed would be considered a part of the 'amount realized' within the meaning of sec. 111(b). The cases so deciding have already repudiated the notion that there must be an actual receipt by the seller himself of 'money' or 'other property', in their narrowest senses. It was thought to be decisive that one section of the Act must be construed so as not to defeat the intention of another or to frustrate the Act as a whole, and that the taxpayer was the 'beneficiary' of the payment in 'as real and substantial [a sense] as if the money had been paid it and then paid over by it to its creditors.' [Fns. refs. omitted.]"

the donated property, even though it may have made a gift of the value of the property in excess of the amount of the indebtedness assumed.

Here, we conclude that petitioner realized a gain upon the transfer of the 33 Matador automobiles with a basis to him of $34,203.34 to a trust for his children where the trust upon the transfer assumed and paid an indebtedness of $62,602.36, on which indebtedness petitioner was personally liable.

Section 1245, I.R.C. 1954,[7] provides for the treatment of gain from the disposition of depreciable personal property as ordinary income where the amount realized on the disposition exceeds the taxpayer's adjusted basis in the property. There are exceptions to this provision, one of which is to a disposition of property by gift. However, petitioner does not argue that any gain realized on the disposition of the 33 Matador automobiles was not ordinary income under section 1245. Obviously, if we recognized the disposition of the automobiles to be totally by gift and ignored the assumption by the trustee of the trust of petitioner's indebtedness, there would be no gain. The gain results because the disposition was not totally by gift. We assume it is for this reason that petitioner does not argue against the application of section 1245 to the gain realized, aside from his argument that no gain was realized.

We decide the only issue presented for our decision for respondent. However, since it is not clear whether other adjustments are necessary because of the issues disposed of by agreement of the parties,

*Decision will be entered under Rule 155.*

---

[7]Unless otherwise noted, all section references are to the Internal Revenue Code of 1954, as amended.