**ESTATE of Henry P. LIPMAN, Deceased, John F. Dodd, Executor, and Estate of Lillian R. Lipman, Deceased, Alma R. Marston, Executrix, Plaintiffs-Appellees,**

v.

**UNITED STATES of America, Defendant-Appellant.**

**No. 17014.**

United States Court of Appeals
Sixth Circuit.

May 4, 1967.

J. Edward Shillingburg, Department of Justice, Washington, D. C., Mitchell Rogovin, Asst. Atty. Gen., Lee A. Jackson, I. Henry Kutz, Attys., Department of Justice, Washington, D. C., on brief, J. H. Reddy, U. S. Atty., G. Wilson Horde, Asst. U. S. Atty., Knoxville, Tenn., of counsel, for appellant.

John Y. Merrell, Washington, D. C., for appellees.

Before O'SULLIVAN, PHILLIPS, and PECK, Circuit Judges.

PECK, Circuit Judge.

Plaintiffs-appellees brought this action in the District Court for refund of federal income taxes paid for the taxable year 1959. They had filed a joint return for the year in question (as well as for other years), and will herein be referred to as "husband-taxpayer" and "wife-taxpayer" respectively.

In 1946 husband-taxpayer acquired a block of stock in Jewel Box of Kingsport, Inc., hereinafter the "Corporation," for $14,400. In that same year he transferred the stock to his wife, and in 1959 under the terms of a contract which will be hereinafter discussed the stock was sold to the Corporation for $54,000. Tax on the appreciation was paid under protest as income received in 1959, and this action for refund followed. Both of the taxpayers having died, the action was brought by the executor of the estate of husband-taxpayer and the executrix of the estate of wife-taxpayer.

The agreement under which acquisition of the stock was accomplished by the Corporation was received in evidence as a Collective Exhibit. It recites that husband-taxpayer desired to retire as an officer and director of the Corporation (other evidence establishes him to have then been 75 years of age and in failing health), and further recites a debt owing by him to the Corporation in the amount of $18,565.97. The total purchase price of $54,000 was provided to be paid as follows: Five annual installments in the amount of $6,000 each on January 10, 1960 through 1964; $6,000 less a credit in the sum of $565.97 to be applied

against husband-taxpayer's indebtedness to the Corporation to be paid as the seventh installment January 10, 1965, and the remaining three annual installments of $6,000 each to be applied January 1, 1966 through 1968 as credits against his obligation, and in full liquidation thereof. The Corporation's indebtedness in the amount of the purchase price of the stock was evidenced by an instrument stipulated in the Pretrial Order as being a "non-interest-bearing negotiable promissory note payable to the order of Lillian R. Lipman." The District Court found that under the agreement taxpayers received no taxable income in 1959 and entered judgment for the refund prayed for in the complaint, with interest. This appeal followed.

The sole question presented in this court is whether such a casual sale of personal property was made under the agreement as would qualify it to be treated as an installment sale under the provisions of 26 U.S.C. § 453. Paragraph (a) of that Section first provides that certain vendors may return income received from qualifying installment sales in the year that such installments are actually received. Sub-paragraph (b) (1) (B) provides that income from a casual sale on an installment basis for a price exceeding $1,000 may be so returned, but Sub-paragraph (2) (A) (ii) excludes from those which may be so returned transactions under which payments in the taxable year of the sale exceed 30% of the selling price. It is the contention of the appellant that regardless of the contrary indication offered by the agreement and the books of the parties, husband-taxpayer actually received $18,565.97 in 1959 by the cancellation of his indebtedness in that amount in that year, and that since that amounts to more than 30% of the $54,000 sale price of the stock the transaction does not qualify as an installment sale. Taxpayers contend, and the District Court found, that "neither of these taxpayers received any payments in excess of 30% of the selling price (or, any payment at all, for that matter) in 1959." It was

on that basis that judgment for the taxpayers was well awarded.

■■ Appellant argues first that in considering the 1959 transaction its substance, not its form, must be taken into account, quoting " * * * tax law deals in economic realities, not legal abstractions * * *." Commissioner v. Southwest Expl. Co., 350 U.S. 308, 315, 76 S. Ct. 395, 399, 100 L.Ed. 347 (1956). See also Commissioner v. P. G. Lake, Inc., 356 U.S. 260, 266–267, 78 S.Ct. 691, 2 L. Ed.2d 743 (1958), and Helvering v. F. & R Lazarus & Co., 308 U.S. 252, 255, 60 S.Ct. 209, 84 L.Ed. 226 (1939). We recognize these principles as well as the fact that liabilities of a taxpayer which are assumed by a purchaser are treated as money received (Crane v. Commissioner, 331 U.S. 1, 12–14, 67 S.Ct. 1047, 91 L. Ed. 1301 (1947)), and that payment or cancellation of a debt can constitute income to the debtor under the specific provisions of 26 U.S.C. § 61(a) (12). The present problem, then, is not *whether* the cancellation of husband-taxpayer's debt constituted taxable income to him, but *when* (i. e., in what taxable year) was such taxable income received.

It is the appellant's argument that:

"The substance and reality of the 1959 transaction was that the debt of the husband was immediately retired and in the year of the sale. After the agreement was signed all that remained were bookkeeping entries. While on the face of the agreement the payment of the husband's debt was made to appear to occur in the years 1965 through 1968, in actuality the indebtedness was discharged as effectively as it ever could be in 1959 with the signing of the contract. The only party to the sales agreement who could have been in default at any time after its execution was the purchaser; the sellers had fully performed by passing title to the stock, upon and contemporaneous with the execution of the agreement in 1959."

This argument, however, fails to take into account two further aspects of the agreement. First, it must be kept in

mind that there were actually three, not merely two, parties to it. Wife-taxpayer agreed to transfer stock, the Corporation agreed to buy it, and husband-taxpayer (as well as his wife, who is not indicated in the record as ever having been engaged in the jewelry business) covenanted not to compete with the Corporation for ten years within a fifty mile radius of the Corporation's place of business. The Corporation's agreement not to require repayment of husband-taxpayer's debt for a number of years constituted consideration for his promise not to compete, and breach by him would have made it possible for the Corporation to have immediately required payment of that debt without in any way affecting its obligation to pay wife-taxpayer $6,000 a year.

The second and more important aspect in this context of the transaction not satisfactorily responded to by appellant concerns the possible results of the Corporation's insolvency at any time prior to the complete liquidation of husband-taxpayer's debt. The record discloses that subsequent to the execution of the agreement the books of the Corporation reflected a long-term obligation carried as a liability under an account entitled "Notes Payable — [wife-taxpayer]." The books further carried an item in an asset account entitled "Account Receivable—[husband-taxpayer]." Had the Corporation gone into bankruptcy between 1959 and January 9, 1965, the trustee would have been entitled to recover $18,565.97 from him, and thereafter until January 10, 1968, such balance of his indebtedness as had not been paid by the credit installments. Appellant attempts to avoid this conclusion by arguing that if corporate insolvency had developed husband-taxpayer would have resisted the claims of creditors on the ground that his indebtedness had been liquidated in 1959, but this argument is patently conjectural.

In his Memorandum Opinion (D.C., 245 F.Supp. 393) District Judge C. G. Neese stated:

"This Court is of the opinion, finds and concludes, that the taxpayers made a casual disposition of [wife-taxpayer's] personal property for a price exceeding $1,000.00 during the tax year 1959; that neither of these taxpayers received any payments in excess of 30% of the selling price (or, any payment at all, for that matter) in 1959, the year of the said sale; that the taxpayers were entitled to file a joint return for said year, and each taxpayer was entitled to whatever benefit might lawfully accrue to either under the revenue laws due to their filing a joint return; that the taxpayers, in their amended return for that year, made a valid election to have the capital gain they realized jointly taxed under the installment method, 26 U.S.C. § 453; John P. Reaver, 42 T.C. [p. 72] (1964) No. 5; and that, accordingly, the taxpayers were entitled to report a long-term capital gain on such casual disposition of [wife-taxpayer's] personal property in the amount of 73.33% of the annual collections received therefrom in 1960, 1961, 1962, 1963 and 1964 and to be received in 1965, 1966, 1967 and 1968, 26 U.S.C. § 453(a) (1) and (d) (3)."

■■ The findings and conclusions of the district judge being supported by substantial evidence and not being clearly erroneous (Whipple v. Commissioner of Internal Revenue, 373 U.S. 193, 204, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963); Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 289–291, 80 S. Ct. 1190, 4 L.Ed.2d 1218 (1960)*), they will not be disturbed on appellate review, and the judgment of the District Court is affirmed.

* In both *Whipple* and *Duberstein* the original determination had been made by the Tax Court. However, Stanton v. United States, decided with *Duberstein*, dealt with a District Court determination, and both courts are referred to without distinction as "the fact-finding tribunal."