Teofilo **EVANGELISTA and Frances Evangelista, Appellants,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Appellee.**

**No. 79–2331.**

United States Court of Appeals, Seventh Circuit.

Argued April 2, 1980.

Decided Aug. 12, 1980.

---

Frank A. Ross, Jr., Ross & Chatterton, Madison, Wis., for appellants.

James A. Reidy, Tax Div., Dept. of Justice, Washington, D.C., for appellee.

Before PELL and WOOD, Circuit Judges, and BAKER, District Judge.*

HARLINGTON WOOD, Jr., Circuit Judge.

The issue presented is whether under the circumstances of this case the transfer of assets and the contemporaneous assumption of the transferor's liability by the transferee is taxable to the transferor when the liability assumed by the transferee exceeds the adjusted basis in the assets transferred. We hold that, in this case, the transferor realized taxable income to the extent the liability assumed by the transferee exceeds the transferor's adjusted basis in the assets.

* District Judge Harold A. Baker of the Central District of Illinois is sitting by designation.

### The Transaction

The facts of the present controversy are not in dispute as the parties have entered a stipulation of the relevant facts. Petitioner–taxpayer Dr. Teofilo Evangelista,[1] on July 24, 1972, purchased thirty–three Matador automobiles at a cost of $102,670 from the GOMA Corporation of Madison, Wisconsin. The cars were purchased subject to an existing lease with an agency of the United States government. To have sufficient proceeds to effect this purchase, Dr. Evangelista, on the same day, executed a promissory note payable to the Park Bank in Madison for $106,000. Dr. Evangelista was personally liable for payment of the note. The bank also took a purchase money consensual security interest in the thirty–three automobiles.

Petitioner personally owned the Matadors for a little less than one year. During the parts of the two tax years in which he owned the automobiles, Dr. Evangelista and his wife Frances reported income received from the leased autos and claimed depreciation expenses of $34,233.33 for each tax year.[2] On July 3, 1973, when the adjusted basis in the autos was $34,203.34, Dr. Evangelista transferred his entire interest in the thirty–three Matadors and the related lease to a trust established for the sole benefit of his two children. That same day the trustee, Dr. Evangelista's wife Frances, assumed primary liability for the payment of the remaining balance of the note owed to the Park Bank, which at that time was $62,603.36.[3]

The Evangelistas did not pay any income tax on the transfer. Nor is there any indication in the record that they filed a gift tax return for the transfer. Further, the Evangelistas offered no evidence concerning the fair market value of the thirty–three automobiles on the date of the transfer.

The Commissioner of the Internal Revenue determined deficiencies in the Evangelistas' taxes of $5,834.66 for 1972 and $13,377.03 for 1973.[4] The Commissioner, relying on *Old Colony Trust Co. v. Commissioner,* 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929); *Crane v. Commissioner,* 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (1947); and Section 1001 of the Internal Revenue Code,[5]

---

1. Dr. Evangelista's wife Frances is also a petitioner in this case because the Evangelistas filed a joint return.

2. The Evangelistas computed their depreciation expense using the double declining balance method with a three–year useful life for the cars. The $34,233.33 figure for each year was based on holding the cars for 6 months in each year.

3. The trustee eventually paid the entire $62,603.36 encumbrance.

4. Initially, the Commissioner determined a deficiency based on the Evangelistas' alleged improper calculation of depreciation. The Commissioner determined that the 33 Matadors and an additional 20 automobiles purchased in 1973, which are not the subject of this action, had only a one -year useful life and thus depreciation should be calculated on a straight–line method, not the double–declining balance method. In March 1977, the Commissioner added an additional theory of deficiency based on the transfer of the 33 Matadors to the trust. The depreciation issue was subsequently settled leaving only the taxability of the transfer as an issue in the case.

5. All statutory citations in this opinion are to the Internal Revenue Code of 1954.

I.R.C. § 1001, as applicable in this case, provided in pertinent part:

Determination of amount of and recognition of gain or loss

(a) Computation of gain or loss.–The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain, and the loss shall be the excess of the adjusted basis provided in such section for determining loss over the amount realized.

(b) Amount realized.–-The amount realized from the sale or other disposition of property shall be the sum of any money received plus the fair market value of the property (other than money) received . . .

(c) Recognition of gain or loss.–In the case of a sale cr exchange of property, the extent to which the gain or loss determined under this section shall be recognized for purposes of this subtitle shall be determined under section 1002.

\*    \*    \*    \*    \*    \*

26 U.S.C. § 1002, referred to in Section 1001(c), provided:

Except as otherwise provided in this subtitle, on the sale or exchange of property the entire amount of the gain or·loss, determined under section 1001, shall be recognized.

reasoned that the Evangelistas realized income and taxable gain in the transfer to the extent that the primary liability of which Dr. Evangelista was relieved exceeded the adjusted basis in the property transferred.[6] The Tax Court agreed with the Commissioner.[7] Petitioner appealed.

## I.

The Commissioner's first position is that under Section 1001 of the Code, the Evangelistas are subject to income tax as a result of the transfer because they received consideration from the transferee which exceeded the adjusted basis in the automobiles. Under Section 1001 "[t]he gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis . . ." I.R.C. § 1001(a). The Commissioner asserts that the transfer, whether it be considered a gift or not, was a taxable disposition and that under Section 1001 the assumption of the primary liability by the transferee was a taxable amount realized by the Evangelistas to the extent it exceeded the adjusted basis in the automobiles.[8]

Contrary to the Commissioner's position, we feel that the characterization of the transaction as a gift, part gift–part sale, or some other taxable disposition determines the income tax consequences. Subsection (a) of Section 1001 provides for the computation of gain or loss on the "sale or other disposition of property." Subsection (b) defines the amount realized from such a disposition. Neither subsection purports to define what is a taxable disposition nor when a disposition becomes taxable; they both only instruct how to measure any amount realized. See I.R.C. § 1001(a), (b); *United States v. Davis*, 370 U.S. 65, 68–69, 82 S.Ct. 1190, 1192, 8 L.Ed.2d 335 (1962); *Gutbro Holding Co. v. Commissioner*, 138 F.2d 16, 21 (2d Cir. 1943). Neither subsection makes any gain taxable which otherwise would not be. To determine the taxability of a gain one must refer to other provisions of the Code. For instance, the taxability of a sale or exchange was provided for in Section 1002. The use of the language "other disposition" in subsections (a) and (b), contrary to the Commissioner's contention, does not mean any amount realized to the donor associated with a gift is taxable as income.[9]

The Commissioner's reliance on *Crane v. Commissioner*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 and *Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 49 S.Ct. 499, 73

---

In 1976 Congress repealed Section 1002. Pub.L. 94 455, Title XIX, § 1901(b)(28)(B)(i) (Oct. 4, 1976), 90 Stat. 1799. At the same time Section 1001(c) was amended to provide for the recognition of gain or loss on the sale or exchange of property.

6. The Commissioner calculated taxable gain as follows:

| | |
|---|---|
| Cost of the 33 vehicles | $102,670.00 |
| (minus) Depreciation | 68,466.66 |
| Adjusted basis | $ 34,203.34 |
| Debt assumed by trustee | $ 62,603.36 |
| (minus) Adjusted basis | 34,203.34 |
| Taxable gain | $ 28,400.02 |

The Commissioner asserted and the taxpayers have not contested that the gain is ordinary income through application of the depreciation recapture provisions of Section 1245 of the Internal Revenue Code.

7. The Tax Court's opinion is published at 71 T.C. 1057 (1979).

8. On this point the Commissioner relies on *Old Colony Trust Co. v. Commissioner*, 279 U.S.

716, 49 S.Ct. 499, 73 L.Ed. 918 (employer's agreement to pay employees' income tax liability is a realized gain to the employees); *Crane v. Commissioner*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301 (balance due on a mortgage to which transferred property is subject is an amount realized to the seller of the property); and *Johnson v. Commissioner*, 495 F.2d 1079 (6th Cir.), *cert. denied*, 419 U.S. 1040, 95 S.Ct. 527, 42 L.Ed.2d 317 (1974) (transferors realize something of value upon the transfer of encumbered stock to a trust). *See also First National Industries, Inc. v. Commissioner*, 404 F.2d 1182 (6th Cir. 1968), *cert. denied*, 394 U.S. 1014, 89 S.Ct. 1633, 23 L.Ed.2d 41 (1969); *Malone v. United States*, 326 F.Supp. 106 (N.D.Miss. 1971), *aff'd*, 455 F.2d 502 (5th Cir. 1972).

9. If, as the Commissioner contends, Section 1001(a) makes a gift a taxable disposition because it is an "other disposition," it would follow that a tax loss results to the extent any value received by the donor in a gift transaction is less than the adjusted basis of the assets transferred. *See* I.R.C. § 1001(a).

L.Ed. 918 for his position that the present transaction, whether a gift or not, is a taxable disposition is misplaced. In both cases the transaction involved a taxable disposition. In *Crane* the transaction was a sale, taxable under another provision of the Code. In *Old Colony Trust* the amount realized was compensation for labor services, also a transaction whose taxability is not questioned. Neither case suggests that a gift may be a taxable disposition to the donor.[10]

No other provision of the Internal Revenue Code specifically makes a gift taxable to the donor. While there is no section specifically excluding any value accruing to the donor in a pure gift situation, indications are that there are no income tax consequences if the transaction is a gift. Gifts are predominantly treated pursuant to the gift tax provisions of the Code, a totally different taxing scheme. Pursuant to I.R.C. § 102, the donee's receipt of a gift is excluded from income tax treatment. Further, cases suggest that a gift is ordinarily not a taxable disposition. *See e. g., Campbell v. Prothro,* 209 F.2d 331 (5th Cir. 1954) (gift of appreciated property does not give rise to recognition of gain even when deductions have been taken for business expenses which were necessary to the appreciation of the property). The Commissioner briefly mentions Section 61 as a possible Code source for establishing the taxability of a gift. This is a very general provision which merely defines gross income to include: "Gains derived from dealings in property . . . ." I.R.C. § 61(a)(3). Congress, in establishing the taxability of gains arising from a sale or exchange of property, did not rely on Section 61(a)(3) but felt it necessary to provide for this in a separate Code provision. This and the other indications concerning the general taxability of a gift suggest to us that if Congress intended a transfer that is properly

characterized as a gift to be a taxable disposition it would have shown this intent more explicitly.

The proper inquiry is whether a given transaction is properly characterizable as a gift or as a taxable disposition.[11] In *Commissioner v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), the Supreme Court clarified the circumstances in which a transfer of property constituted a gift. Eschewing an opportunity to establish an easy to apply test, the Court stated that the determination of whether a transfer is a gift depends on an objective inquiry of all the circumstances to assess the "intention with which payment, however voluntary, has been made." *Id.* at 285–86, 80 S.Ct. at 1197. If the transaction "proceeds from a 'detached and disinterested generosity,' *Commissioner v. LoBue,* 351 U.S. 243, 246 [76 S.Ct. 800, 802, 100 L.Ed. 1142], 'out of affection, respect, admiration, charity or like impulses,' *Robertson v. United States* [343 U.S. 711,] 714 [72 S.Ct. 994, 996, 96 L.Ed. 1237] . . .," it is a gift. *Commissioner v. Duberstein,* 363 U.S. at 285, 80 S.Ct. at 1197.

Thus, a court addressing the issue must examine the circumstances surrounding a transaction to determine whether a gift was made. In the context of this case, an issue is raised whether a transfer can constitute a gift when the transferor receives something of value which exceeds the adjusted basis of the assets transferred. This is concededly an important circumstance in determining whether the transfer was a gift. The taxpayers contend, however, that this circumstance need not defeat the characterization of the transfer as a gift and that in the totality of the circumstances present they have made a "net gift." They rely on a series of cases in which it was held that the transferee's assumption of the transferor's

---

**10.** In *Hirst v. Commissioner,* 572 F.2d 427 (4th Cir. 1978)(in banc), the court rejected the Commissioner's reliance on *Crane* and *Old Colony Trust. But see Estate of Levine v. Commissioner,* No. 80–4034 (2d Cir. July 10, 1980), in which the court, while indicating it was not deciding the issue, left little doubt that it found

the Commissioner's argument based on *Crane* persuasive.

**11.** A taxable disposition would also include a transfer properly characterized as a part gift–part sale. *See* 26 C.F.R. § 1.1001–1(e).

obligation to pay gift taxes arising from a gift did not defeat the status of the transaction as a gift without income tax consequences to the transferor. *See, e. g., Turner v. Commissioner*, 49 T.C. 356 (1968), *aff'd*, 410 F.2d 752 (6th Cir. 1969) (per curiam); *Hirst v. Commissioner*, 572 F.2d 427 (4th Cir. 1978) (in banc), *affirming*, 63 T.C. 307 (1974); *Estate of Henry v. Commissioner*, 69 T.C. 665 (1978), on appeal to the Sixth Circuit, No. 78–1340 (argued July 16, 1980).[12]

An examination of these cases is useful. *Hirst v. Commissioner* is typical. In *Hirst* the taxpayer owned a one–half interest in three tracts of undeveloped land. The taxpayer decided to give her interest in the three tracts to her son and his family, it is presumed to avoid the burden of holding the non–income producing tracts and to benefit her son. The gift of such assets, however, required the payment by the taxpayer of substantial gift taxes.[13] As part of the transaction the taxpayer's son agreed that he would pay the gift tax liability. The taxpayer made the transfer and filed a gift tax return listing the adjusted basis and appraised value of each tract. The taxpayer computed the value of the gift subject to tax by subtracting from the total appraised value of the tracts the sum of the state and federal gift taxes which her son and his family had agreed to pay. Even though the taxpayer's gift tax liability assumed by her son far exceeded the adjusted basis in the assets, the Fourth Circuit, sitting *in banc*, held that the transaction did not have income tax consequences for the donor. The court said "[t]he circumstances of the transaction determined the tax consequences." 572 F.2d at 431 (opinion of Chief Judge Haynsworth). The predominant circumstance–that the taxpayer did not intend to sell anything but only to give her property to her family even though the taxpayer received a benefit, the value of which exceeded the adjusted basis of the assets transferred–dispelled any notion of taxable gain accruing to the donor. *Id.* at 430–31. In addition, the court noted that the transferor in her net position did not receive anything because the value of what she gave exceeded that of what she received. The transferor had made a net gift to the extent that the value of the tracts exceeded the gift tax liability assumed and this did not create taxable income. Further, the fact that the donor had been relieved of a personal liability–payment of gift taxes–which exceeded the adjusted basis in the tracts did not change the nature of the transaction. The taxpayer had made a gift.[14]

By analogy to *Hirst* and similar cases, the Evangelistas claim the transaction was an intra–family gift to the trust to the extent the fair market value of the automobiles exceeded the liability assumed. The obligation to pay the note to the bank was incurred by the trustee as a condition and an integral part of Dr. Evangelista's intent. Given the close connection between the au-

---

12. *See also Krause v. Commissioner*, 56 T.C. 1242 (1971), *appeal dismissed* (6th Cir. 1972); *Estate of Davis v. Commissioner*, 30 T.C.M. 1363 (1971), *aff'd*, 469 F.2d 694 (5th Cir. 1972) (per curiam); *Estate of Morgan v. Commissioner*, 37 T.C. 981 (1962), *aff'd*, 316 F.2d 238 (6th Cir.) (per curiam), *cert. denied*, 375 U.S. 825 (1963). *But see Estate of Levine v. Commissioner*, No. 80 -4034 (2d Cir. July 10, 1980); *Johnson v. Commissioner*, 59 T.C. 791 (1973), *aff'd*, 495 F.2d 1079 (6th Cir.), *cert. denied*, 419 U.S. 1040 (1974). For a discussion of this line of cases, see the Tax Court's opinion in *Hirst v. Commissioner*, 63 T.C. 307.

13. I.R.C. § 2502(d) provides that payment of the gift tax upon the transfer of property by gift is the responsibility of the donor. *See Estate of Sheaffer v. Commissioner*, 313 F.2d 738 (8th Cir.), *cert. denied*, 375 U.S. 818, 84 S.Ct. 55, 11 L.Ed.2d 53 (1963).

14. The Fourth Circuit in *Hirst* relied on the reasoning of the Tax Court in *Turner v. Commissioner*, 49 T.C. 356 (1968), *aff'd*, 410 F.2d 752 (6th Cir. 1969) (per curiam). In *Turner*, in an analogous situation to *Hirst*, the Tax Court held that, because the transferor "wished to make gifts" and "[s]he acted upon this intent," she made a net gift which was the value of the transferred property less the value of the gift tax payable on the transfers. 49 T.C. at 363. Thus, even though the donor's liability was assumed by the donee and this liability exceeded the adjusted basis in the property transferred, there were no income tax consequences to the donor.

tomobiles transferred and the obligation, and the method in which the obligation arose, the mere fact that the donor received something of value in making the gift, petitioners argue, even where that something exceeds the adjusted basis of the assets transferred, does not necessarily mean the donor did not possess the intent to make a net gift. Petitioners assert that so long as the fair market value of the assets transferred exceeded the adjusted basis in those assets and the circumstances suggested only an intent to make a net gift, the transfer could properly be characterized as a gift.

The Commissioner responds that the net gift cases were incorrectly decided [15] and, alternatively, that they should be limited to situations in which the donee assumes the donor's gift taxes. The Commissioner further argues that on the facts of record in this case the taxpayers could not have made a gift. Because we find that there are insufficient facts in the record to support the Evangelistas' assertion that the transfer was a net gift, we need not consider the Commissioner's contention that *Turner, Hirst,* and *Estate of Henry* were incorrectly decided or the view that those cases should be limited to the situations presented therein.[16]

The record in this case does not support the Evangelistas' argument that Dr. Evangelista made a gift, and if no gift was made, taxpayers' reliance on *Turner, Hirst,* and *Estate of Henry* is misplaced. There is no indication whether the fair market value of the thirty–three Matadors on the date of the transfer equaled or exceeded $62,603.36, the amount of the liability which the trustee assumed.[17] If the fair market value of the automobiles on the date of the transfer did not exceed the amount of the encumbrance assumed, Dr. Evangelista could not have made a net gift. If this were the case, he would have received more than he donated. He simply could not have given anything. Since under the circumstances of this case we think it the responsibility of the Evangelistas to establish that Dr. Evangelista made a gift,

---

15. In *Johnson v. Commissioner,* 495 F.2d 1074, the Sixth Circuit substantially reduced the precedential impact of *Turner.* In *Johnson* the court disavowed the importance of determining the intent of the transferor and instead looked to what the transferor received in the transaction. If the transferor received consideration in excess of the adjusted basis in the property transferred, the transferor was subject to income tax on the transfer. *See also Estate of Levine v. Commissioner, supra.* The characterization of the transaction as a net gift was deemed irrelevant. *Johnson,* 495 F.2d at 1083. *See Millar v. Commissioner,* 67 T.C. 656 (1977), aff'd, 577 F.2d 212 (3d Cir.), cert. denied, 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 704 (1978). The court severely limited *Turner* to its peculiar fact situation in which the Commissioner had made important concessions and stated: "The payment of a donor's gift tax liability by the donee constitutes income to the donor." 495 F.2d at 1083.

Subsequent to *Johnson* the Tax Court, in *Hirst* and *Estate of Henry,* has stuck to its analysis of the net gift situation. The Fourth Circuit indicated that the intent of the transferor and the nature of the transaction is determinative. *Hirst v. Commissioner,* 572 F.2d at 430 ·31. For a further discussion of this issue, see Adams, *Exploring the Outer Boundaries of the Crane Doctrine; An Imaginary Supreme Court Decision,* 21 Tax L.Rev. 159(1969); Del Cotto, *Basis and Amount Realized Under Crane: A Current View of Some Tax Effects in Mortgage Financing,* 118 U.Pa.L.Rev. 69 (1969); Spears, *Mortgage in Excess of Basis,* 1959 So. Cal. Tax Inst. 883; Suwalsky, *Net Gifts–A Critical Look at Johnson v. Commissioner,* (BNA) Tax Management Mem. 75–05 (March 3, 1975); Note, *Income Tax Consequences of Encumbered Gifts: The Advent of Crane,* 28 U.Fla.L. Rev. 935 (1976); Comment, *Assumption of Indebtedness by a Donee Income Tax Consequences,* 17 Stan.L.Rev. 98 (1964). We do not express any opinion as to the resolution of this issue.

16. Normally, whether under the circumstances the transfer is a gift is a factual determination to be made by the trier of fact. Here, however, the facts are insufficient to warrant a remand.

17. The only possible indication in the record of the fair market value of the 33 Matadors on July 3, 1973, the date of the transfer, is contained in an amendment to the answer filed by counsel for the Internal Revenue Service. This document recites that the 33 Matadors had a fair market value of $60,240.45 on the date of the transfer, an amount less than the liability assumed by the trustee. At another point in the record the $60,240.45 figure is referred to as the salvage value of the 33 automobiles calculated by subtracting allowable straightline depreciation for 6 months in 1972 and 1973.

we find the lack of this evidence fatal to the Evangelistas' net gift argument. They did not show he intended to make a gift. Additionally, there is no evidence in the record that Dr. Evangelista treated the transaction as a gift. He did not file a gift tax return for the transaction. He merely treated the transaction as having no gift or income tax consequences. While not determinative, this factor further suggests this is not a net gift situation. The Tax Court's characterization of the transaction as a taxable disposition to the extent the amount of the primary liability assumed exceeded the adjusted basis is appropriate.[18]

## II.

The Evangelistas secondly argue that Dr. Evangelista received no economic benefit as a result of the trustee's assumption of primary liability in the note and thus there was no amount realized within the meaning of Section 1001. A transferor need not actually receive "money" or "other property" in their narrowest senses for there to be an "amount realized." *Crane v. Commissioner*, 331 U.S. at 13, 67 S.Ct. at 1054. An agreement by a corporation to pay the taxpayer's income taxes (*Old Colony Trust Co. v. Commissioner*, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918 (1929)), the sale of property by a taxpayer subject to the buyer's assumption of the mortgage on the property (*Crane v. Commissioner*, 331 U.S. 1, 67 S.Ct. 1047, 91 L.Ed. 1301), and the assumption of a taxpayer's personal liabilities (*Estate of Lipman v. United States*, 376 F.2d 455 (6th Cir. 1967)) are all considered part of gross income.[19] In the present transaction the trustee assumed the pri-

mary liability on the note payable. This relieved Dr. Evangelista of his primary personal liability on the note. The Evangelistas argue, however, that if the trust income and assets were insufficient to cover the liability the bank would have recourse to Dr. Evangelista for payment on the note. Therefore, they claim he still faced the risk of being called on to make payment and thus he received no economic benefit from the assumption of the liability.

We disagree with the view that any remaining potential liability placed Dr. Evangelista in no different economic position from where he was before the transfer and assumption of the liability. After the assumption of the liability the bank would look to whatever income or assets the trust possessed for payment. Only in the event the trust income or assets failed would Dr. Evangelista be called on to make payment. The assumption of the liability substantially reduced Dr. Evangelista's responsibility on the note; he was no longer primarily liable. A potential situation in which Dr. Evangelista would be called on to make payment is too speculative to defeat the assertion that Dr. Evangelista received an economic benefit in the amount of the liability assumed in the year of the transfer. The amount of the liability assumed was an amount realized within the meaning of Section 1001 of the Internal Revenue Code.

Accordingly, we affirm the Commissioner's finding of income tax deficiencies.

Affirmed.

18. Our conclusion that no gift was made and that the transaction was therefore taxable means we need not consider the taxpayers' argument based on the comparability of the 1969 Tax Reform Act's charitable contribution provisions.

We also find *Edwards v. Greenwald*, 217 F.2d 632 (5th Cir. 1954), inapplicable. *Edwards* involved a gift to a trust and contemporaneous assumption of the donor's personal liability by the trustee. There the Commissioner based his argument for taxation on the theory that the donor retained an interest in the donated prop-

erty to pay off the liability and thus it was taxable to the donor under Section 167 of the Internal Revenue Code of 1939, the predecessor to I.R.C. § 677. The court rejected the Commissioner's reliance on the retained interest theory. Here, the Commissioner has abandoned this theory.

19. *See also Millar v. Commissioner*, 577 F.2d 212 (3d Cir.), *cert. denied*, 439 U.S. 1046, 99 S.Ct. 721, 58 L.Ed.2d 704 (1978); *Kohler–Campbell Co. v. United States*, 298 F.2d 911 (4th Cir. 1962).